[No. 24476. *En Banc.* April 26, 1933.]

THE STATE OF WASHINGTON, *on the Relation of W. W. Burt, Plaintiff,* v. ERNEST N. HUTCHINSON, *as Secretary of State, Respondent.*[1]

[1]Reported in 21 P. (2d) 514.

*J. Speed Smith, Henry Elliott, Jr.,* and *Peters, Evans & McLaren,* for relator.

*The Attorney General* and *John W. Hanna, Assistant,* for respondent.

*John A. Homer* and *Hugh C. Todd, Amici Curiae.*

BLAKE, J.—This is an original application in this court for a writ of mandamus, directed to the respondent, as secretary of state.

The relator, in his affidavit, alleges that he desires to order by petition, in accordance with the provisions of amendment 7 of the state constitution, a referendum of chapter 55, Laws of 1933, p. 290 [Rem. 1933 Sup., § 8312-1 *et seq.*], known as the Horse Racing act, and entitled:

"An Act relating to, providing for and authorizing and regulating thoroughbred and/or standard bred horse racing; creating the Washington horse racing commission; defining its powers and duties, and fixing compensation thereof; prescribing the manner in which race meets may be conducted; prohibiting pool selling, book making, and circulation of hand books; authorizing the pari-mutuel system; providing for issuance of licenses and fees to be charged; apportioning revenue to the old age pension fund; fixing the penalties for violation of the act; and providing that the act shall take effect immediately."

Relator further alleges that he has tendered to respondent, for filing, the papers prerequisite to the issuance of a petition, and that respondent has refused to accept them, and has refused to take such further steps as are necessary to be taken by him preliminary to the issuance of a petition for a referendum of the act.

Respondent admits those allegations contained in the affidavit, and justifies his refusal to proceed because of the following section of the act:

"Sec. 12. This act is necessary for the immediate preservation of the public peace, health and safety, the support of the state government and its existing public institutions and shall take effect immediately."

Section 7 of the act provides that it shall be unlawful to sell pools or to indulge in any wagering devices in connection with horse racing, conducted under the provisions of the act, "other than by the pari-mutuel method." [Id., § 8312-7.]

Section 9 of the act provides that five per cent of the gross receipts of the pari-mutuel machines shall be paid over to the Washington horse racing commission, and that eighty per cent of the five per cent (that is to say, four per cent of the gross revenues of the pari-mutuel machines) shall by the commission

" . . . be paid to the state treasurer, and by him placed in the old age pension fund of the state treasury, which is hereby created." [Id., § 8312-9.]

The section further provides for the distribution of the fund so created to the various counties in aid of the obligation imposed upon them by chapter 29, Laws of 1933, p. 173 [Rem. 1933 Sup., § 9998-1], known as the Old Age Pensions act.

■ The issue presented calls for the construction of that portion of the seventh amendment to the constitution which reads as follows:

"(b) Referendum. The second power reserved by the people is the referendum, and it may be ordered on any act, bill, law, or any part thereof passed by the legislature, *except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions,* either by petition signed by the required percentage of the legal voters, or by

the legislature as other bills are enacted. Six per centum, but in no case more than thirty thousand, of the legal voters shall be required to sign and make a valid referendum petition.'' (Italics ours.)

It cannot be seriously contended that the emergency clause of the Horse Racing act can be justified as ''necessary for the immediate preservation of the public peace, health or safety,'' nor for the ''support of the state government.'' It is contended, though, that it is for the support of an ''existing public institution.''

In *State ex rel. Blakeslee v. Clausen,* 85 Wash. 260, 274, 148 Pac. 28, Ann. Cas. 1916B, 810, construing this portion of the amendment, Judge Chadwick said that the institutions contemplated were those

'' . . . existing at the time the amendment was adopted, or which, if newly created by the legislature, have not been rejected by resort to the referendum.''

We fail to see how ''old age pensions'' could be regarded as an ''existing institution'' of the state at the time the emergency clause was written into the Horse Racing act. The Old Age Pensions act contains no emergency clause. If it is not subjected to a referendum, it will take effect June 8, 1933. If it is subjected to a referendum, its operation will be suspended until the general election of 1934. Furthermore, it would be confronted with the possibility of rejection by the voters, and might never become operative. In such case, if the emergency clause of the Horse Racing act is upheld, we would have the anomaly of the people having been deprived of the right of passing upon the latter by referendum when they had rejected the institution it was allegedly designed to support.

In view of these facts, it seems clear to us that the creation of a fund for ''old age pensions'' is a mere

incident to the Horse Racing act; that the purpose of that act is to legalize horse racing and permit wagering by pari-mutuel machines. This is neither a police measure, nor an appropriation act, nor an act in support of an existing state institution.

We think the writ should be granted. It is therefore ordered that the writ issue forthwith.

MILLARD, MAIN, STEINERT, and MITCHELL, JJ., concur.

HOLCOMB, J. (dissenting)—The effect of the majority decision is to restore to effectiveness the principles laid down in *State ex rel. Brislawn v. Meath,* 84 Wash. 302, 147 Pac. 11, with which I heartily concur. However, its effect is also, without discussing some of our cases, to overrule them *sub silentio*. For instance, while I dissented from the decision in *State ex rel. Short v. Hinkle,* 116 Wash. 1, 198 Pac. 535, together with some of my associates, which was a decision declaring an emergency clause valid as to the immediate necessity of the effectiveness of legislation merely transferring the duties of some forty state departments to other state departments, the effect of the decision, in which, although it was attempted to distinguish the *Brislawn* case, was to overrule the principle of the *Brislawn* case.

This decision also, in effect, overrules *State ex rel. Anderson v. Howell,* 106 Wash. 542, 181 Pac. 37, holding an emergency clause valid respecting the operation of the motor vehicle code of 1919. That act provided funds for the support of the highways of the state merely by a different system of license fees than had been provided by the motor vehicle act of 1915. This decision is also in conflict with the decision in *State ex rel. Reiter v. Hinkle,* 161 Wash. 652, 297 Pac. 1071, involving the emergency clause to a law passed

by the legislature of 1931, chapter 23 (Laws of 1931, p. 77, Rem. Rev. Stat., § 8358-1), which was an entirely new statute requiring distributors of butter substitutes to secure licenses and pay a tax of fifteen cents per pound on each pound of butter substitute sold in this state. We there held the emergency clause valid, and denied the right of referendum. Shortly thereafter, in *State ex rel. Shelor v. Hinkle,* 162 Wash. 702, 298 Pac. 1070, by a *per curiam* opinion involving a referendum sought upon chapter 140, Laws of 1931, p. 430 (Rem. Rev. Stat., § 6326), which was an act amending the law relating to motor vehicle licenses and the gasoline tax, which reduced the automobile license fee to three dollars, we denied a referendum by holding the emergency clause valid under the rule of the *Reiter* case, *supra.*

Our cases are now in hopeless confusion. One of the objects of a court of last resort in determining constitutional questions and in statutory construction, should be consistency. Although I vigorously objected to the decision in the *Short* case, *supra,* it became the law, and should be followed or at least discussed and distinguished, if possible. I can see no distinction between the principles I contended for in that case and those in the *Brislawn* case, *supra.*

Regardless of the merits or demerits of the Old Age Pensions law and whether it should be subjected to referendum (as to which there is no present indication), and the possible diversity of opinion as to the morality or wisdom of chapter 55, Laws of 1933, p. 290, commonly known as the Horse Racing act, with which this court should have no concern, the Old Age Pension act had, in fact, been passed and approved by the governor before the Horse Racing act was enacted. The Old Age Pensions act was therefore an existing law, requiring the expenditure of public money by the

counties for the support of those specified therein. A substantial part of the funds to be derived from license fees under the Horse Racing act is to be allocated to the counties for the support of the aged poor. The state has not provided other funds for the support of such poor, whom "we have always with us." (*Rummens v. Evans,* 168 Wash. 527, 13 P. (2d) 26). But whether the "old age pensions" be an existing state institution or not, is beside the question. The state itself has a primary duty of providing for its indigent citizens. It must raise money to enable it so to do. In performing the duty, it is performing a governmental duty where the counties have heretofore acted as the agents of the state. Hence, this fund is for the support of the state government, whatever the machinery of the distribution may be. The fund is for the support of state government in the performance of a primary duty. The Horse .Racing act in question provides revenue for the counties for a duty imposed upon them by the Old Age Pensions act.

Deploring as I do the effect of vacillation in our rule of decision, I feel impelled to dissent from the decision of the majority.

TOLMAN, J., concurs with HOLCOMB, J.

BEALS, C. J. (dissenting)—I also dissent from the conclusion reached by the majority. In my opinion, the writ should not issue.