[No. 29623. *En Banc.* April 2, 1945.]

THE STATE OF WASHINGTON, *on the Relation of Kenneth McLeod, et al., Plaintiff,* v. BELLE REEVES, *as Secretary of State, Respondent.*[1]

[1]Reported in 157 P. (2d) 718.

*Lee Olwell* and *Eli M. Paulson*, for relators.

*The Attorney General* and *Simon Wampold, Jr., Assistant*, for respondent.

BLAKE, J.—The relators comprise a committee whose purpose it is to invoke a referendum on the Laws of 1945, chapter 37, p. 153, entitled:

"AN ACT relating to game and the appointment of a State Game Commission, and amending Pierce's Perpetual Code 235-3, section 107B, chapter 7, Laws of 1921, as enacted by section 8, chapter 3, Laws of 1933; and repealing Pierce's Perpetual Code 235-5, section 107C, chapter 7, Laws of 1921, as enacted by section 9, chapter 3, Laws of 1933, and declaring an emergency."

To that end, they tendered a petition to the secretary of state in compliance with the provisions of Rem. Rev. Stat., § 5397 [P. P. C. § 639-1]. The secretary of state declined to accept the petition on the ground that the act took effect immediately upon its passage by reason of the fact that it contained a declaration of emergency.

The relators here seek a writ of mandamus to compel the secretary of state to accept and file the petition, to the end that the act be referred to the people at the general election of 1946.

The application presents the question as to whether the act (notwithstanding it carries a declaration of emergency) is subject to referendum under § 1 (b) of the seventh amendment to the constitution, which, so far as pertinent, provides:

"The second power reserved by the people is the referendum, and it may be ordered on any act, bill, law, or any part thereof passed by the legislature, *except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions, . . .*" (Italics ours.)

The declaration of emergency is contained in § 3 of the act, and reads as follows:

"This act is necessary for the immediate preservation of the public peace, health and safety and for the immediate support of the state government and its existing public institutions and shall take effect immediately."

■ The legislative declaration of emergency carries great weight, for it is not to be presumed that the legislature has intentionally disregarded the limitations imposed upon it by the constitution. But whether or not it has done so is, in the ultimate, a judicial question. *State ex rel. Brislawn v. Meath,* 84 Wash. 302, 147 Pac. 11.

Now, there are just two classes of acts that are excepted from the referendum provisions of the constitution: (1) such as are pursuant to, and in the exercise of, the police power; and (2) those providing for the support of the state government and its existing public institutions. If the act in question falls within either class, it is not, by reason of the legislative declaration of emergency, subject to referendum.

We think, however, that it is apparent that the act before us falls within neither class. In its essence, all that the act purports to achieve is to make the appointment of commissioners under the state game code (initiative 62, Laws of 1933, chapter 3, p. 24, Rem. Rev. Stat. (Sup.), § 5855-1 [P. P. C. § 235-1] *et seq.*), subject to appointment and removal "at the pleasure of the governor" instead of, as provided in the code, being appointed for fixed terms and subject to removal only for cause.

■ Respondent does not contend that the declaration of emergency is valid on the ground that the act is for the "support of the state government and its existing public institutions." Such contention would be untenable in any event. For we have held that the "support" contemplated in the constitutional provision means *financial* support. *State ex rel. Satterthwaite v. Hinkle,* 152 Wash. 221, 277 Pac. 837. Certainly, there is nothing in the act that suggests that it is in any way designed to contribute to the

financial support of the state government or any of its existing public institutions.

 Respondent does contend, however, that the act falls within the first category of acts excepted from the referendum; that it is an act "for the immediate preservation of the public peace, health and safety . . ."

The basis for this contention, as we understand it, is this: That the provision in the game code (initiative 62, Laws of 1933, chapter 3, p. 24) for the appointment of game commissioners for fixed terms, subject to removal only for cause, constitutes an unconstitutional encroachment upon the executive powers of the governor; that, by reason of that provision embraced in the game code, the entire act of 1933 is tainted with unconstitutionality; that, by the passage of the Laws of 1945, chapter 37, the taint was purged, and the code was thereby preserved.

The contention is without substance. Section 45 of the game code, p. 46, provides:

"If any provision or section of this act shall be adjudicated to be unconstitutional, such adjudication shall not affect the validity of the act as a whole or any part thereof not adjudicated unconstitutional."

Were we to concede that the appointment of commissioners, as provided for in the game code, constituted an unconstitutional encroachment upon the executive power of the governor, there would be no foundation, in the light of the provisions of § 45, for holding the entire act unconstitutional.

The code would still stand unimpaired, and the commissioners who hold office pursuant to its terms would, at least, be *de facto* officers until their successors are appointed. The enactment of the Laws of 1945, chapter 37, was not necessary to maintain the integrity of the game code. The act, therefore, does not fall within either class of legislation excepted from the referendum.

This conclusion finds ample support in the cases of *State ex rel. Brislawn v. Meath, supra,* and *State ex rel. Satterthwaite v. Hinkle, supra.* In principle, the problems presented in those cases are indistinguishable from that pre-

sented in this. The act under consideration in the former case related to a change of personnel of the board of state land commissioners. In the latter case, the act under consideration provided for the substitution of a director of highways for the department of highways. The changes contemplated by those acts were far more radical than the change contemplated by the Laws of 1945, chapter 37. Yet, we had no hesitancy in striking down the declarations of emergency to the end that the acts be subjected to referendum.

Furthermore, the decision in the *Satterthwaite* case was made in face of the decision in *State ex rel. Short v. Hinkle,* 116 Wash. 1, 198 Pac. 535, wherein the court upheld a declaration of emergency attached to the administrative code, *Laws of 1921,* chapter 7, p. 12. That case, however, no longer has any authoritative value. Recognizing that the decision was in conflict with the *Brislawn* and *Satterthwaite* decisions, and believing, if left standing as authority, it would serve to impair the integrity of the referendum provisions of the constitution, we expressly overruled it in *State ex rel. Robinson v. Reeves,* 17 Wn. (2d) 210, 135 P. (2d) 75.

A peremptory writ of mandamus will issue forthwith in accordance with the prayer of relators.

BEALS, C. J., MILLARD, STEINERT, ROBINSON, SIMPSON, JEFFERS, MALLERY, and GRADY, JJ., concur.