[No. 50398–2.   En Banc.   October 18, 1984.]

MARK F. ANDREWS, JR., ET AL, *Petitioners,* v. RALPH MUNRO, *as Secretary of State,* ET AL, *Respondents.*

*Lane, Powell, Moss & Miller,* by *Thomas S. Zilly, Raymond W. Haman, Wilbur J. Lawrence,* and *Daniel M. Hendrickson,* for petitioners.

*Kenneth O. Eikenberry, Attorney General,* and *Edward B. Mackie, Chief Deputy,* for respondent State.

*David McDonald,* for respondents Fortson, et al.

DOLLIVER, J.—Petitioners seek a writ of prohibition to prevent respondent Secretary of State Ralph Munro from processing or certifying proposed referendum measure 41 to election officials for submission to the voters at the general election on November 6, 1984. *See* Const. art. 4, § 4; RAP 16.2(a). The referendum was filed on March 22, 1984, by respondent intervenors Eleanor Fortson and The Committee to Maintain a Fair Timber Tax. The referendum is to the timber tax act (the Act), Laws of 1984, ch. 204, §§ 3–7, p. 1002. On May 23, 1984, this court, by order, granted the writ of prohibition ordering the Secretary of State to refrain from taking any action to process or certify proposed referendum measure 41 for the November 1984 election.

Prior to 1972, most growing timber and underlying commercial forest land in the state of Washington was assessed and taxed as other real property. By the enactment of Laws of 1971, 1st Ex. Sess., ch. 294, the Legislature introduced a different tax system for forest lands. While ad valorem property taxation was continued based on the value of the underlying forest land, an excise tax payable at the time timber is harvested was substituted for the former ad valorem tax on growing timber.

The Legislature did not, prior to 1984, fix a permanent excise tax rate for timber harvest. Instead, a temporary tax of limited duration was enacted and subsequently extended by the Legislature several times.

Laws of 1983, 2d Ex. Sess., ch. 3, § 59, p. 2195, codified at

RCW 84.33.071, provided for a tax on the harvesters of timber as follows:

(1) Upon every person engaging within this state in business as a harvester of timber; as to such persons the amount of tax imposed with respect to such business shall be equal to the stumpage value of timber harvested between *July 1, 1983, through June 30, 1984,* for sale or for commercial or industrial use multiplied by the *rate of six and one–half percent.*

(Italics ours.)

In 1984, the Legislature passed Senate Bill 4421 which provided in part:

NEW SECTION. Sec. 2. (1) An excise tax is imposed on every person engaging in this state in business as a harvester of timber on privately or publicly owned land. The tax is equal to the stumpage value of timber harvested for sale or for commercial or industrial use multiplied by the rate provided in this chapter.

(2) A credit is allowed against the tax imposed under this section for any tax paid under section 8 of this act.

(3) Moneys received as payment for the tax imposed under this section and section 8 of this act shall be deposited in the timber tax distribution account hereby established in the state general fund.

NEW SECTION. Sec. 3. The rate of tax imposed under section 2 of this act for timber harvested July 1, 1984, through June 30, 1985, shall be six and one–half percent.

NEW SECTION. Sec. 4. The rate of tax imposed under section 2 of this act for timber harvested July 1, 1985, through June 30, 1986, shall be six and one–eighth percent.

NEW SECTION. Sec. 5. The rate of tax imposed under section 2 of this act for timber harvested July 1, 1986, through June 30, 1987, shall be five and three–fourths percent.

NEW SECTION. Sec. 6. The rate of tax imposed under section 2 of this act for timber harvested July 1, 1987, through June 30, 1988, shall be five and three–eighths percent.

NEW SECTION. Sec. 7. The rate of tax imposed under section 2 of this act for timber harvested July 1, 1988, and thereafter, shall be five percent.

Laws of 1984, ch. 204, §§ 2–7, p. 1002.

The proposed referendum states it is:

To be submitted to the people at the General Election of November 6, 1984.
Sec. 3. The rate of tax imposed under section 2 of this act for timber harvested ~~July 1, 1984, through June 30, 1985,~~ shall be six and one–half percent.
Sec. 4. delete entire section.
Sec. 5. delete entire section.
Sec. 6. delete entire section.
Sec. 7. delete entire section.

Const. art. 2, § 1(b) (amend. 7) provides:

Referendum. The second power reserved by the people is the referendum, and it may be ordered on any act, bill, law, or any part thereof passed by the legislature, *except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions,* either by petition signed by the required percentage of the legal voters, or by the legislature as other bills are enacted . . .

(Italics ours.) The seventh amendment contains two separate and distinct exceptions from the power of referendum: Laws as may be necessary for (1) immediate preservation of the public peace, health or safety, or (2) support of the state government and its existing public institutions. *Farris v. Munro,* 99 Wn.2d 326, 335–36, 662 P.2d 821 (1983).

Petitioners contend the Act is necessary for support of the state government and therefore exempt from the referendum process. Respondents urge an interpretation of the Act which would subject it to referendum. Although the Legislature provided a continuation of the timber tax, due to expire on June 30, 1984, at a rate of 6.5 percent from July 1, 1984 through June 30, 1985, Laws of 1984, ch. 204, § 3, p. 1002, respondents point out it also specified yearly incremental reductions in the tax rate, culminating in a permanent rate of 5 percent on timber harvested July 1, 1988 and thereafter. Laws of 1984, ch. 204, §§ 4–7, p. 1002. Because the latter provisions reduce the timber tax rate, respondents assert they cannot be necessary for the support

of government, and thus sections 4 through 7 are subject to the referendum.

We are persuaded neither by respondents' attempt to isolate sections of the Act nor by their speculative argument that incremental reductions in the tax rate will reduce revenues. While "any part" of an "act, bill, or law" as passed by the Legislature is subject to referendum, if there are "laws as may be necessary for the . . . support of the state government and its existing public institutions", such laws are not subject to referendum. Const. art. 2, § 1(b) (amend. 7). We have already held that to determine whether an act of the Legislature is subject to referendum we must consider the act as a whole, not piecemeal. *See State ex rel. Helm v. Kramer,* 82 Wn.2d 307, 316–17, 510 P.2d 1110 (1973).

The various sections of the Act, 49 in total, comprise a comprehensive system of taxation on timber, with the clear purpose of raising revenue. These sections are "integral parts of the legislative plan", *State ex rel. Pennock v. Coe,* 42 Wn.2d 569, 585, 257 P.2d 190 (1953).

Without passage of the Act, taxes on the harvesters of timber would have ceased on June 30, 1984. RCW 84.33-.071. Laws of 1984, ch. 204 is necessary for support of the state government. *Farris v. Munro,* at 336–37; *State ex rel. Hoppe v. Meyers,* 58 Wn.2d 320, 327, 363 P.2d 121, 100 A.L.R.2d 304 (1961); *State ex rel. Reiter v. Hinkle,* 161 Wash. 652, 657–58, 297 P. 1071 (1931).

As a result of study and analysis of modernized systems of taxation of timber, the Legislature proposed and passed the Act "to assure the citizens of this state and its future generations the advantages to be derived from the continuous production of timber . . ." Laws of 1984, ch. 204, § 16(1), p. 1007. We do not speculate whether the lowering of the tax rate from 6.5 percent to 5 percent between 1984 and 1988 would lessen or increase the support of state government. Such a venture on the part of this court is both inappropriate and irrelevant.

The 1984 timber tax act is immune from the referendum

process under Const. art. 2, § 1(b) (amend. 7).

The writ of prohibition is granted.

WILLIAMS, C.J., and BRACHTENBACH, DIMMICK, and PEARSON, JJ., concur.

DORE, J. (dissenting)—The majority holds that, because the timber tax act, Laws of 1984, ch. 204, is a state revenue measure, it is not subject to referendum. "We do not speculate whether the lowering of the tax rate from 6.5 percent to 5 percent between 1984 and 1988 would lessen or increase the support of state government. Such a venture on the part of this court is both inappropriate and irrelevant." Majority opinion, at 765.

This is precisely the question posed by Const. art. 2, § 1(b) (amend. 7). In the subject case, the referendum is valid unless the portions of the timber tax act sought to be referred are necessary for the support of the state. I find that they are not *remotely* necessary for such support. I dissent.

Const. art. 2, § 1(b) (amend. 7) provides in part:

> Referendum. The second power reserved by the people is the referendum, and it *may be ordered on any* act, bill, *law, or any part thereof* passed by the legislature, *except such laws as may be necessary for the* immediate preservation of the public peace, health or safety, *support of the state government and its existing public institutions,* either by petition signed by the required percentage of the legal voters, or by the legislature as other bills are enacted . . .

(Italics mine.)

Prior to enacting the 1984 act, the Legislature was confronted with an existing 6.5 percent tax on harvested timber which was scheduled to expire on June 30, 1984. The 1984 act accomplished two things. It preserved the 6.5 percent timber tax rate for 1 year and provided for incremental yearly reductions in the tax rate from July 1, 1985 through June 30, 1988. To the extent the 1984 act continued the timber tax, it was revenue producing and necessary

for the support of state government. To the extent the Act reduced the timber tax rate, it effectively diminished state revenue and should not be deemed constitutionally immune from the referendum. The referendum measure would cancel those sections of the legislation which provide for the scheduled reductions in the tax rate and would continue the 6.5 percent tax rate on timber harvests.

This court has long recognized that the initiative and referendum provisions are to be liberally construed so as to *facilitate* the constitutional right of the people to legislate. *State ex rel. Case v. Superior Court,* 81 Wash. 623, 632, 143 P. 461 (1914). In *State ex rel. Howell v. Superior Court,* 97 Wash. 569, 577, 166 P. 1126 (1917), the court observed:

> Whatever divergence of opinion there may be among the courts touching the meaning of constitutional or statutory provisions relating to the initiative and referendum, we think it safe to say that all courts that have spoken upon the subject agree that such provisions *are to be liberally construed, to the end that these popular legislative rights of the people reserved in the several constitutions where found may be preserved and rendered effective.*

(Italics mine.)

In *State ex rel. Berry v. Superior Court,* 92 Wash. 16, 26, 159 P. 92 (1916), this court noted:

> [T]he people in their legislative capacity are superior to all other branches of government, superior to the legislature which made this law; in fact, supreme in their legislative capacity.

Although this court has consistently held that laws imposing taxes or increasing revenues to be constitutionally immune from the referendum, we have never held that a referendum that seeks to prohibit the reduction in revenues to the State is prohibited. *See Farris v. Munro,* 99 Wn.2d 326, 662 P.2d 821 (1983); *State ex rel. Hoppe v. Meyers,* 58 Wn.2d 320, 363 P.2d 121, 100 A.L.R.2d 304 (1961); *State ex rel. Reiter v. Hinkle,* 161 Wash. 652, 297 P. 1071 (1931); *State ex rel. Blakeslee v. Clausen,* 85 Wash. 260, 148 P. 28

(1915). Moreover, this court in *State ex rel. Case v. Howell*, 85 Wash. 281, 286–87, 147 P. 1162 (1915) rejected the majority's contention that all tax and revenue laws are immune from the referendum:

> The framers of the seventh amendment to our state constitution, and the people by its adoption, have, therefore, selected and excepted from the operation of the referendum, . . . such measures as are essential to the preservation of these things, in that government is so essential; namely, laws necessary for "support of the state government and its existing public institutions." While this last phase of the exception may include some revenue laws and some appropriation laws, that is not the line of cleavage. *The clear intention was to include within the exception any and all laws, and only such, as may be necessary for such support.*

(Italics mine.) It would seem unreasonable to hold that legislation which provides for a reduction in revenue to the State is "necessary for the support of state government." It is appropriate for the proponents of referendum 41 to submit to the people those parts of the 1984 timber tax which call for a reduction of the tax rate.

In those cases involving statutes allegedly exempted from referendum, this court has divided about evenly in allowing and disallowing the referendum. *See* Trautman, *Initiative and Referendum in Washington: A Survey*, 49 Wash. L. Rev. 55, 74–75 (1973). This is a result of the court's prior recognition of "a most delicate balance" between the powers of the Legislature and the people's right of referendum. *State ex rel. Humiston v. Meyers*, 61 Wn.2d 772, 777, 380 P.2d 735 (1963).

The timber tax act is not solely for the support of state government, unlike "support" measures this court has previously considered. *See* cases cited in Trautman, at 74 n.73. Where a major purpose of the bill is other than support, the support clause does not apply. The case of *State ex rel. Burt v. Hutchinson*, 173 Wash. 72, 21 P.2d 514 (1933) is illustrative. That case involved a bill legalizing horse racing and providing for fees to be collected by the State. *See*

*Hutchinson,* at 73. The court rejected the State's assertion that this bill was to support state government, concluding:

[I]t seems clear to us that the creation of a fund for "old age pensions" is a mere incident to the Horse Racing act; that the purpose of that act is to legalize horse racing and permit wagering by pari–mutuel machines. This is neither a police measure, nor an appropriation act, nor an act in support of an existing state institution.

*Hutchinson,* at 75–76.

If the referendum sought to reduce revenues to the State, the argument would be different. This is not the case here. Conversely, the referendum seeks to maintain a higher revenue in support of the State and eliminate a tax reduction which clearly was intended not in support of the State but as relief to the timber industry.

Referendum 41 simply asks the people to approve or reject the incremental reduction in the timber tax rate set forth in the 1984 act. This is an appropriate exercise of the people's referendum power.

I would deny the writ of prohibition and hold in favor of the people's constitutional right of referendum.

ROSELLINI, J., and HAMILTON, J. Pro Tem., concur with DORE, J.