65 P.3d 1203 (2003)
149 Wash.2d 48
WASHINGTON STATE LABOR COUNCIL; Washington Retail Association; Washington Restaurant Association; Washington Food Industry; Washington Growers League; Aerospace Machinist Union No. 751; Washington Bankers Association; Purse Seine Vessel Owners Association; Coalition of Coastal Fisheries; Washington Food Processors Council; Washington State Auto Dealers Association, Inc.; Safeway, Inc.; Winco Foods, Inc.; Stormans, Inc.; and Fuller Market Basket, Inc., Petitioners, and
Gary Locke, Governor of the State of Washington, Intervenor/Petitioner,
v.
Sam REED, in his official capacity as Secretary of State of the State of Washington, Respondent, and
Elliot J. Swaney and Vote No on New Taxes, Intervenors/Respondents.
No. 73235-3.
Supreme Court of Washington, En Banc.
Argued December 10, 2002.
Decided April 3, 2003.
*1205 Kathleen Benedict, Robin Dale, Erik Price, Olympia, Lane Powell Spears Lubersky, Michael King, Seattle, for petitioners.
Christine Gregoire, Atty. Gen., Narda Pierce, Jeffrey Even, William Collins, Asst. Attys. Gen., for respondent.
Timothy Ford, Kristopher Tefft, Christine Gregoire, Olympia, for respondent intervener.
Groen Stephens & Klinge, Richard Stephens, Diana Kirchheim, John Groen, Bellevue, for amicus curiae on behalf of Wash. State Legislature.
*1204 ALEXANDER, C.J.
An order was previously entered in this matter dissolving the temporary injunction we had earlier entered against Secretary of State Sam Reed. The injunction prevented him from certifying the results of the election on Referendum Measure 53. In that order we indicated that "[a]n opinion explaining the court's decision will be issued in due course." Wash. State Labor Council v. Reed, No. 73235-2, at 2 (Wash. Jan. 10, 2003) (order). This is that opinion.
We were asked by the Washington State Labor Council, et al. (WSLC) to issue a writ of mandamus, or in the alternative, a writ of prohibition, restraining the secretary of state from canvassing and certifying to the governor the vote count on Referendum Measure 53 (Referendum 53) from the November 5, 2002, general election. In its petition for the writ, WSLC asserted that Referendum 53 is outside the constitutional scope of referendum under article II, section 1(b) of the *1206 Washington State Constitution. We have determined that we will exercise our discretionary jurisdiction under article IV, section 4 of the constitution and consider this petition. After having done so, we conclude that because the legislature indicated that only section 2 of the underlying legislation, Engrossed House Bill 2901, is "necessary for the immediate preservation of the public peace, health, or safety, or support of the state government and its existing public institutions," the remainder of the bill is subject to referendum. Agreed Statement of Facts (ASOF) App. 2, at 25. Accordingly, the petition for the writ is denied.

I. Facts
Washington's 57th Legislature passed Engrossed House Bill 2901 (EHB 2901), now Laws of 2002, chapter 149, which amends Title 50 RCW, the state Employment Security Act. The bill was signed by Governor Gary Locke on March 26, 2002, with a partial veto of section 14 of the bill.[1] EHB 2901, inter alia, allocates additional money for training benefits for aerospace workers, sets new percentage amounts for determining class rates, sets new contribution rates for employers, creates an insolvency surcharge, creates an equity surcharge for employers with ineffective charges in their experience rating account for three of the four preceding years, addresses successor employer rates when an employer is not an employer at the time of the employee's transfer, as well as sets out other requirements in support of unemployment insurance and the Unemployment Security Department which administers the insurance.
On March 28, 2002, Elliot J. Swaney (Swaney) filed a proposed referendum with the Office of the Secretary of State referring to the people in the next general election all of the amendments made by the legislature to the Employment Security Act in sections 5, 7, 8, 10, 12, 13, 16, and 17 of EHB 2901. The secretary of state designated the filing as Referendum Measure 53.[2]
The proponents of Referendum 53 collected the required number of signatures and properly followed the statutory requirements for ballot measures. On June 4, 2002, the petitioners formally requested that Secretary of State Reed withhold Referendum 53 from the November 5, 2002, general election ballot. Secretary of State Reed declined to do so based on the historical practice of his office to refrain from determining whether a measure does or does not fall within the constitutional scope of the referendum process (except to decline referendums where the legislature has included an emergency clause). The secretary of state then certified Referendum 53 as supported by a sufficient number of signatures of registered voters to qualify for the November 5, 2002, ballot.
The petitioners, WSLC, then filed an original action in this court on July 8, 2002, seeking a declaration that Referendum 53 is unconstitutional. As relief they sought a writ of prohibition, or in the alternative a writ of mandamus,[3] prohibiting the secretary of state from certifying to the county auditors a ballot including Referendum 53. Governor Gary Locke, and Elliot J. Swaney and Vote No on New Taxes (Vote No) were permitted to intervene as petitioners and respondents, respectively. All of the parties agreed upon a statement of facts which was submitted to this court.
Following oral argument to this court on September 10, 2002, we declined to issue a writ of mandamus or prohibition, indicating by order that there was "insufficient time to engage in the deliberations that a case of this *1207 magnitude demands," and because an immediate decision was not required by the dates of implementation of those sections of EHB 2901 included in Referendum 53. Wash. State Labor Council v. Reed, No. 72615-9 at 2 (Wash. Sept. 23, 2002) (order). The general election proceeded on November 5, 2002.
After the election, petitioners[4] filed a second original action with this court on November 8, 2002, again seeking a writ of mandamus or a writ of prohibition prohibiting Secretary of State Reed from canvassing and certifying to the governor the votes on Referendum 53. The governor and Swaney and Vote No were again permitted to intervene. On the petitioners' motion, we enjoined the secretary from canvassing and certifying the results of the election on Referendum 53 until further order of the court. With leave of the court, Swaney and Vote No then filed a cross-petition seeking a writ of mandamus compelling the secretary of state and the governor to comply with their election duties to canvass and certify the votes, and to declare the results, under RCW 29.62.130.

II. Writ of Mandamus
We must first address the issue whether an original action before this court seeking a writ of mandamus is the appropriate procedure and remedy in this matter. This court has nonexclusive and discretionary original jurisdiction to issue a writ of mandamus against a state officer pursuant to article IV, section 4 of the constitution. Const. art. IV, § 4; State ex rel. LaFollette v. Hinkle, 131 Wash. 86, 89-90, 229 P. 317 (1924).
`[T]he established rule [regarding mandamus proceedings] seems to be that as original jurisdiction is conferred in order that the court of highest authority in the state should have the power to protect the rights, interests, and franchises of the state, and the rights and interests of the whole people, to enforce the performance of high official duties affecting the public at large, ... the court is vested with a sound legal discretion to determine for itself, as the question may arise, whether or not the case presented is of such a character as to call for the exercise of its original jurisdiction.'

State ex rel. O'Connell v. Meyers, 51 Wash.2d 454, 459-60, 319 P.2d 828 (1957) (quoting State ex rel. Malmo v. Case, 25 Wash.2d 118, 123, 169 P.2d 623 (1946)). In our view, there is sufficient public interest in whether a referendum before the voters at the general election was, in fact, within the scope of the referendum power set forth in article II, section 1(b) of the constitution. Therefore, the question in this case is of such a character that we will exercise our original jurisdiction.
Although we are generally reluctant to interfere in the electoral process or to give advisory opinions, we have on previous occasions considered whether a ballot measure is authorized within the scope of the power of direct democracy reserved in article II, section 1(b). See, e.g., Andrews v. Munro, 102 Wash.2d 761, 689 P.2d 399 (1984); State ex rel. Kennedy v. Reeves, 22 Wash.2d 677, 157 P.2d 721 (1945); State ex rel. Robinson v. Reeves, 17 Wash.2d 210, 135 P.2d 75 (1943), overruled on the merits by State ex rel. Hoppe v. Meyers, 58 Wash.2d 320, 328, 363 P.2d 121 (1961); see also Philadelphia II v. Gregoire, 128 Wash.2d 707, 716-17, 911 P.2d 389 (1996) (a court may review the substance of a proposed initiative to determine whether it exceeds the scope of power set forth in Const. art. II, § 1). While it is preferred that a party seek an injunction at the superior court level instead of filing an original action in the Supreme Court, in rare circumstances we will consider judicial economy and reach the merits of whether an initiative or a referendum was within the constitutional powers of article II, section 1(b). Id. at 716, 911 P.2d 389; see also State ex rel. O'Connell v. Kramer, 73 Wash.2d 85, 86, 436 P.2d 786 (1968) (parties stipulated to and agreed upon a statement of facts, thus obviating referral of the cause to superior court). As we determined in Philadelphia II, judicial economy compels us to consider the merits of this case. The parties have fully briefed and argued the substantive issues twice in five months, and if we were to decline to exercise *1208 jurisdiction it is likely the petitioners would renew their petition in a superior court. The matter could arrive at this court a third time.
Mandamus is an appropriate remedy where a petitioner seeks to prohibit a mandatory duty. State ex rel. Heavey v. Murphy, 138 Wash.2d 800, 804-05, 982 P.2d 611 (1999); City of Tacoma v. O'Brien, 85 Wash.2d 266, 268, 534 P.2d 114 (1975) (citing State ex rel. O'Connell v. Yelle, 51 Wash.2d 620, 320 P.2d 1086 (1958)). The secretary of state is charged with the statutory duty to canvass the votes and certify the results to the governor within 30 days after any election. RCW 29.62.130. This duty is mandatory. RCW 29.62.130 (using the word "shall"); see also Heavey, 138 Wash.2d at 805, 982 P.2d 611. Therefore, a writ of mandamus is an appropriate remedy if we determine that the secretary of state should be prohibited from completing the duties set forth in RCW 29.62.130. The secretary of state should only be prohibited from these duties if Referendum 53 is not within the constitutional scope of the referendum power.

III. Is EHB 2901 Within the Scope of the Referendum Power?
Article II, section 1 of the 1889 state constitution vests legislative authority in the legislature. In 1912, the Seventh Amendment to the constitution was adopted by the people. It reserved powers of direct democracy to the people by granting them the rights of initiative and referendum. The first power reserved to the people is the initiative which allows the people to create and propose laws themselves. Const. art. II, § 1(a). The second power is the referendum which gives the people the power to review laws enacted by the legislature. Const. art. II, § 1(b). A referendum may be of either an entire act or sections of an act. Const. art. II, § 1(b); Brower v. State, 137 Wash.2d 44, 56-57, 969 P.2d 42 (1998). The purpose of the referendum is to facilitate the governance of the people by themselves. The idea that power lies first and primarily with the people is expressed in the first section of the constitution: "All political power is inherent in the people, and governments derive their just powers from the consent of the governed." Const. art. I, § 1. From this basic concept this court has perceived that the purpose of the Seventh Amendment is to provide "a broad base for the exercise of power by the people," Yelle v. Kramer, 83 Wash.2d 464, 476, 520 P.2d 927 (1974), and declared that the right of referendum is "the first of all the sovereign rights of the citizenthe right to speak ultimately and finally in matters of political concern." State ex rel. Mullen v. Howell, 107 Wash. 167, 171, 181 P. 920 (1919). This right is not, however, unlimited.
Article II, section 1(b) places two separate and distinct limitations on the people's power of referendum. Farris v. Munro, 99 Wash.2d 326, 336, 662 P.2d 821 (1983) (citing State ex rel. Helm v. Kramer, 82 Wash.2d 307, 312, 510 P.2d 1110 (1973)). The referendum may not be ordered on "such laws as may be necessary for the immediate preservation of the public peace, health or safety, [[5]] support of the state government and its existing public institutions." Const. art. II, § 1(b). An act which falls into either of these exceptions is not subject to referendum. See State ex rel. McLeod v. Reeves, 22 Wash.2d 672, 674, 157 P.2d 718 (1945).
Petitioners contend that EHB 2901 is outside the scope of the referendum power. Whether the petitioners are correct depends on whether the act "may be necessary for the... support of the state government and its existing public institutions." Const. art. II, § 1(b). In determining whether an act is subject to referendum this court considers the act as a whole, not just those sections which have been referred. Andrews v. Munro, 102 Wash.2d 761, 765, 689 P.2d 399 (1984).
As is the case with EHB 2901, the legislature often attaches an "emergency clause" to legislation that mimics the wording of the exceptions in article II, section 1(b), causing that legislation to be exempt from *1209 referendum.[6]See State ex rel. Humiston v. Meyers, 61 Wash.2d 772, 380 P.2d 735 (1963). Section 18(1) of EHB 2901 states, as follows: "Section 2 of this act is necessary for the immediate preservation of the public peace, health, or safety, or support of the state government and its existing public institutions, and takes effect immediately." ASOF App. 2, at 25. Intervenor-respondents assert that because EHB 2901 contains an emergency clause directed at section 2 it is apparent that the legislature intended that section 2 and only section 2 is necessary for the immediate preservation of the public peace, health, or safety, or support of the state government and its existing public institutions. Intervenor-respondents argue, therefore, that only section 2 is exempt from the right of referendum. Petitioners respond that it is plain that the entirety of EHB 2901 is a measure in support of an existing public institution regardless of the sweep of the emergency clause.
A "`legislative declaration of emergency and necessity ... is conclusive and must be given effect, unless the declaration on its face is obviously false.'" CLEAN v. State, 130 Wash.2d 782, 807, 928 P.2d 1054 (1996) (quoting Humiston, 61 Wash.2d at 778, 380 P.2d 735). This court has been steadfast in the application of this rule since the adoption of the referendum power. See State ex rel. Brislawn v. Meath, 84 Wash. 302, 307-08, 147 P. 11 (1915). It is a judicial question whether a measure is, in fact, in support of an existing government institution when an emergency clause is challenged or when the legislature has not plainly indicated its intentions. Andrews, 102 Wash.2d 761, 689 P.2d 399; Farris, 99 Wash.2d 326, 662 P.2d 821; Brislawn, 84 Wash. at 313, 318, 147 P. 11. However, the petitioners do not challenge the emergency clause in section 18 and we will not inquire into its validity. Thus, where the legislature declares that a part of an act is necessary for the immediate preservation of the public peace, health or safety, or support of the state government and its existing public institutions and that declaration is not challenged, we will defer to the legislature's intent.
Because the emergency clause only declares that section 2 is necessary, intervenor-respondents claim the statutory construction rule expressio unius est exclusio alterius (express mention of one implies exclusion of all others) applies to EHB 2901 and therefore the remainder of the act is subject to referendum. See Kreidler v. Eikenberry, 111 Wash.2d 828, 835, 766 P.2d 438 (1989). However, this maxim "cannot be rigidly applied to ... defeat the intent of the legislature." State v. Williams, 94 Wash.2d 531, 538, 617 P.2d 1012 (1980). In Amalgamated Transit Union Legislative Council v. State, the court indicated that the rule of expressio unius est exclusio alterius did not necessarily apply without considering other factors which may persuade the court that legislative intent was the opposite of what the statutory construction rule would require. ATU Legis. Council v. State, 145 Wash.2d 544, 552-57, 40 P.3d 656 (2002) (where certain statutes are explicitly repealed by a new law, a statute that was not explicitly repealed is not repealed by implication where factors, such as legislative history and an attorney general opinion, were not sufficient to show legislative intent was to repeal the statute).
In the case of EHB 2901, it is not clear what the legislature intended beyond its declaration that only section 2 is necessary for the immediate preservation of the public peace, health or safety, or support of the state government and its existing public institutions. A thorough reading of the legislative amendments to the Unemployment Compensation Act in EHB 2901 does not yield an *1210 indication one way or the other about whether the legislature considered the remaining amendments emergent or believed the legislation was necessary for support of government institutions. Furthermore, the legislative history is almost silent on this point. However, the Senate Bill Report to EHB 2901 does state that the testimony for the bill claimed the "bill is very important" and intended "to address an immediate crisis in the state's unemployment insurance.... If nothing happens in light of the state's recession and higher unemployment rates, businesses will face a new round of tax increases." S. COMM. ON LABOR, COMMERCE & FIN. INSTS., EHB REP. 2901 (Wash.2002). The House Bill Report indicates that EHB 2901 only makes "beneficial changes" and will prevent "big jumps in tax schedules." H. COMM. ON COMMERCE & LABOR, EHB REP. 2901 (Wash.2002). These statements do not reveal an intent on the part of the legislature that the bill is necessary for the support of the state government or its existing institutions. Rather they seem to indicate the bill is necessary for assisting businesses.
Due to the lack of facts to the contrary, this court concludes that legislative intent is not defeated by application of the rule of construction, expressio unius est exclusio alterius, to EHB 2901. The legislature determined that only section 2 of EHB 2901 is necessary for the immediate preservation of the public peace, health or safety, or support of the state government and its existing public institutions, and thereby determined that the remainder of the act is not. Where the legislature declares that a measure is immediately necessary or is in support of a government institution and that declaration is unchallenged we will defer to the legislature's determination. We therefore conclude that Referendum 53 is within the constitutional scope of the referendum power in article II, section 1(b).
By previous order we denied the petition for a writ of mandamus or prohibition. In light of that ruling, we dissolved the temporary injunction. Because we did so, we need not reach the cross-petitioners' request for a writ of mandamus to issue against Secretary of State Reed and Governor Locke requiring that they canvass, certify, and declare the results of the election pursuant to RCW 29.62.130.

IV. Attorney Fees
Intervenor/respondents seek reasonable attorney fees on the equitable grounds that recovery is possible where a preliminary injunction is issued and then dissolved following trial. Granting attorney fees where a challenge to an injunction is successful is based on the premise that a temporary injunction prohibits a party from engaging in a particular activity. That party's only option, other than submitting to the order, is to take legal action. Attorney fees are awarded for the damages suffered from the injunction. Cecil v. Dominy, 69 Wash.2d 289, 293, 418 P.2d 233 (1966). Here, the temporary injunction was issued against the secretary of state preventing him from completing the statutory duty of canvassing and certifying the vote. It did not issue against the intervenor/respondents and, therefore, did not affect the rights of the intervenor/respondents. The equitable grounds under which attorney fees are sought do not apply and, thus, as we previously indicated by order, reasonable attorney fees are not available to the intervenor/respondents.
JOHNSON, MADSEN, IRELAND, BRIDGE, OWENS, JJ., and SMITH, J.P.T., concur.
CHAMBERS, J. (concurring).
I concur in the result, but write separately because I believe the majority has abdicated its constitutional duty to interpret the law, breached fundamental principles of separation of powers, and failed to establish a clear and predictable standard by which to determine the meaning of "may be necessary for the ... support of the state government and its existing institutions." Wash. Const. art. II, § 1(b).
The brilliance of our constitution is in its checks and balances. The cornerstone of constitutional checks and balances is separation of powers. "[T]he legislature makes, the executive executes, and the judiciary construes the law." Wayman v. Southard, 23 *1211 U.S. (10 Wheat) 1, 46, 6 L.Ed. 253 (1825). The legislative, executive, and judicial sectors are distinct branches of government and each branch must act within its constitutional role and must not encroach upon the province of another branch. Each branch has the sacred legal duty to provide checks on the other branches. Our constitution requires this vital duty.
However, when an initiative or referendum is implicated, the constitutional equation is altered. The majority fails to recognize that there are not three constitutionally recognized entities present in this separation-ofpowers equation, but fourthe fourth being the people of this state. Accordingly, the majority fails to address the correct question in analyzing the constitutional relationship between the legislative and judicial branches. The critical question is whether the legislature has encroached upon the constitutional authority reserved to the people.
The question before us is the balance of power between the people's constitutional right of referendum, and the legislature's constitutionally vested authority to act beyond the reach of a referendum due to the existence of emergency or necessity. By taking an overly deferential approach to a legislative declaration of emergency or necessity, this court fails utterly to examine the people's constitutional power to check the power of the legislature. By effectively deferring to the legislature this court has failed its constitutional mandate to construe the words "necessary" and "emergency" within our constitution and has thereby dulled the brilliance of our state constitution.
The ultimate power to interpret, construe, and enforce the constitution of this State belongs to the judiciary. Brownlee v. Clark, 87 Wash.2d 478, 482, 553 P.2d 1344 (1976). "Both history and uncontradicted authority make clear that "`[i]t is emphatically the province and duty of the judicial department to say what the law is.'"" In re Juvenile Dir., 87 Wash.2d 232, 241, 552 P.2d 163 (1976) (quoting United States v. Nixon, 418 U.S. 683, 703, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (quoting Marbury v. Madison, 5 U.S. (1 Cranch) 137, 176, 2 L.Ed. 60 (1803))). This is so even when that interpretation serves as a check on the activities of another branch or is contrary to the view of the constitution taken by another branch. Powell v. McCormack, 395 U.S. 486, 549, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). The purpose of separation of powers is not to promote efficiency or good will among the departments of government, but instead to preclude the exercise of arbitrary power by one branch of government and to protect the people from autocracy. Myers v. United States, 272 U.S. 52, 293, 47 S.Ct. 21, 71 L.Ed. 160 (1926) (Brandeis, J., dissenting). Accordingly:
"Deciding whether a matter has in any measure been committed by the Constitution to another branch of government, or whether the action of that branch exceeds whatever authority has been committed, is itself a delicate exercise in constitutional interpretation, and is a responsibility of this Court as ultimate interpreter of the Constitution."

Seattle Sch. Dist. v. State, 90 Wash.2d 476, 504, 585 P.2d 71 (1978) (quoting Baker v. Carr, 369 U.S. 186, 211, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)).
Our state constitution declares that "[a]ll political power is inherent in the people, and governments derive their just powers from the consent of the governed." Const. art. I, § 1. The Seventh Amendment (now incorporated into our constitution at article II, section 1) specifically limits the power of the legislative branch:
LEGISLATIVE POWERS, WHERE VESTED. The legislative authority of the state of Washington shall be vested in the legislature, consisting of the senate and house of representatives, which shall be called the legislature of the state of Washington, but the people reserve to themselves the power to propose bills, laws, and to enact or reject the same at the polls, independent of the legislature, and also reserve power, at their own option, to approve or reject at the polls any act, item, section, or part of any bill, act or law passed by the legislature.

. . . .
(b) Referendum. The second power reserved by the people is the referendum, and it may be ordered on any act, bill, law, *1212 or any part thereof passed by the legislature, except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions....
Const. art. II, § 1 (emphasis added).
In enacting the Seventh Amendment, the people "fixed a limit beyond which the legislature cannot go without doing violence to the will and voice of the people." State ex rel. Gray v. Martin, 29 Wash.2d 799, 804, 189 P.2d 637 (1948).
Because of our abiding devotion to separation of powers, we must ask, where is the check if the legislature is at leave, without effective review, to declare any law immune from the people's constitutional power of referendum by simply designating it either an emergency or necessary for the support of a public institution? Where should the balance be struck between the legislative powers of the people and the legislative powers of the legislature? And to whom is the balance entrusted?
The question before us is how to determine whether the legislature has disregarded that limit imposed by the Seventh Amendment. The legislature is not the proper branch of government to resolve this dispute. As delicate and difficult as resolution of the dispute may be, it is nevertheless a task that is assigned to us by the constitution. Unfortunately, by taking an overly deferential approach, the majority has allowed the legislature to become the arbiter of this dispute. It is an essential safeguard of our system of separation of powers that the legislative branch cannot determine whether it has exceeded its own authority. To permit branches to measure their own authority would quickly subvert the principle that state governments, while governments of general powers, must govern by the consent of the people as expressed by the constitution. Courts are exclusively qualified to interpret the constitution. See generally Marbury v. Madison, 5 U.S. (1 Cranch) 137, 176, 2 L.Ed. 60 (1803). To keep the balance, judicial power is severely limited. Courts do not have the authority to legislate, only to construe existing law. Further, courts cannot act on their own prerogative; courts can act only on cases and controversies brought before them.
The majority observes that the legislature has declared section 2 of Engrossed House Bill (EHB) 2901 to be subject to an emergency clause but that the legislature's intention regarding the rest of EHB 2901 is unclear. Thus, according to the majority, the issue is what did the legislature intend with regard to the rest of the act. Majority at 9-10. However, the proper question is not whether the legislature intended to protect the legislation from referendum, but whether this was the sort of legislation that the people intended to be exempt from referendum when they passed the Seventh Amendment.
The majority's reasoning is similar to that in CLEAN v. State, 130 Wash.2d 782, 928 P.2d 1054 (1996), in which this court concluded that if the legislature so declared, then the financing of a new baseball stadium was necessary for the immediate preservation of the public peace, health, or safety. Citing the reluctance of the judicial branch to intrude upon the legislative branch, this court denied the people the right of referendum on whether a sports stadium should be built, in part, at state expense. This court stated it would defer to the legislature's determination of an emergency unless it is obviously false. CLEAN, 130 Wash.2d at 812, 928 P.2d 1054. The constitution requires us to do more.
We have held, as we must under the doctrine of separation of powers, that whether an enactment is necessary for the support of a public institution is a constitutional question subject to judicial interpretation. State ex rel. Humiston v. Meyers, 61 Wash.2d 772, 777, 380 P.2d 735 (1963); State ex rel. Kennedy v. Reeves, 22 Wash.2d 677, 682, 157 P.2d 721 (1945); State ex rel. Brislawn v. Meath, 84 Wash. 302, 318, 147 P. 11 (1915). To allow the legislature to define emergency without meaningful review "is to write this reservation out of the constitution." Brislawn, 84 Wash. at 311, 147 P. 11. Deference to the legislature is certainly appropriate, particularly in areas of its authority and expertise; however, we should not abdicate our constitutional responsibility in the name of deference.
*1213 Montana has taken a different approach. From a similar constitutional scheme of referendum, the Montana Supreme Court reasoned that because the emergency clause limited the people's power, legislative declaration of an emergency must be suspect. Montana resolved the tension between the people and the legislature by creating a presumption in favor of the people. State ex rel. Goodman v. Stewart, 57 Mont. 144, 187 P. 641 (1920).
A review of our jurisprudence reveals that we have never articulated a meaningful test by which to measure whether an act is necessary for the support of public institutions. We have either said an act was necessary, see, e.g., Andrews v. Munro, 102 Wash.2d 761, 689 P.2d 399 (1984) (timber taxation); Farris v. Munro, 99 Wash.2d 326, 662 P.2d 821 (1983) (state lottery); State ex rel. Hoppe v. Meyers, 58 Wash.2d 320, 363 P.2d 121 (1961) (motor fuel tax); State ex rel. Pennock v. Coe, 42 Wash.2d 569, 257 P.2d 190 (1953) (public assistance); State ex rel. Reiter v. Hinkle, 161 Wash. 652, 297 P. 1071 (1931) (tax on butter substitutes); State ex. rel Case v. Howell, 85 Wash. 281, 147 P. 1162 (1915) (financing of local improvement districts) or was not necessary. See, e.g., State ex rel. Humiston v. Meyers, 61 Wash.2d 772, 380 P.2d 735 (1963) (municipal gambling facilities); State ex rel. Kennedy v. Reeves, 22 Wash.2d 677, 157 P.2d 721 (1945) (revising the administration of state timber); State ex rel. McLeod v. Reeves, 22 Wash.2d 672, 157 P.2d 718 (1945) (appointment of game commissioners); State ex rel. Robinson v. Reeves, 17 Wash.2d 210, 135 P.2d 75 (1943) (acquisition of private utility by public utility district); State ex rel. Burt v. Hutchinson, 173 Wash. 72, 21 P.2d 514 (1933) (horse racing and betting system). It seems whether an act is necessary for the support of government or existing institutions as meant by article II, section l has been elusive; we have been able to say we know it when we see it but cannot define it. Not surprisingly, it has been difficult for both the people and the legislature of this state to divine our undisclosed principles of interpretation.
Therefore, I would have this court set forth a clear and predictable standard by which we can meaningfully determine whether an act satisfies the emergency or "necessary for the support of government" requirements of the Seventh Amendment. I would give deference to the legislature within the scope of its power and authority and its unique expertise to set policy. At a minimum, the initial burden must be on the petitioner. A petitioner claiming that an act is not subject to referendum because of emergency or necessity must make a prima facie showing to support the claim of emergency or necessity.
Notwithstanding these views, I concur with the majority that the petition in this instance should fail because the petitioners have failed to make a prima facie showing that the legislation, except perhaps section 2, is either an emergency or a necessity.[1] With or without the inferences afforded by the maxim expressio unius est exclusio alterius relied upon by the majority, the petitioners made an insufficient prima facie showing that EHB 2901 would affect the support of the unemployment insurance system in Washington.[2] I find no reason why those sections of EHB 2901 included in Referendum 53 were not properly subject to the referendum power that the people reserved to themselves. Therefore, I concur in result only.
SANDERS, J., concurs.
NOTES
[1] Section 14 called for a 16-member task force to study the unemployment insurance system and report on those issues in the system addressed by the bill prior to the time that the act would be fully effective. As a result of the veto the sections of EHB 2901 were renumbered from 1-19 to 1-18.
[2] The referendum was first called Referendum Measure 51. Swaney withdrew the proposal and refiled an identical proposal on April 8, 2002, which was called Referendum Measure 53. This action was taken to avoid confusion with the similarly titled Referendum Bill 51, regarding transportation funding, referred to the people by the 57th Legislature.
[3] Initially, the petitioners sought only a writ of prohibition but later amended their petition to request the alternative remedy of a writ of mandamus.
[4] All the petitioners in the first action joined in the second action except three parties.
[5] The court has repeatedly stated that the omission of "or" in the exceptions stated in article II, section 1(b) was an inadvertent mistake and the phrase should be interpreted to include "or" and therefore create two distinct exceptions to the Seventh Amendment. Farris, 99 Wash.2d at 335, 662 P.2d 821 (citing State ex rel. Hoppe v. Meyers, 58 Wash.2d 320, 326, 363 P.2d 121 (1961)).
[6] However, an emergency clause is not required for an act to be exempt from referendum. See State ex rel. Helm v. Kramer, 82 Wash.2d 307, 313, 510 P.2d 1110 (1973) (citing State ex rel. Pennock v. Reeves, 27 Wash.2d 739, 743, 179 P.2d 961 (1947)). Petitioners argue that the legislature is aware of the legal irrelevance omission of an emergency clause in determining whether a measure is exempt from referendum. Thus, petitioners claim, the emergency clause directed at section 2 of EHB 2901 should be treated as "immaterial surplusage." However, omission of an emergency declaration is not the situation before us; the legislature included an emergency clause in EHB 2901. As discussed below, legislative intent is commonly determined by examining what the legislature included in an act and excluding everything else.
[1] I have reservations that a writ of mandamus is the correct remedy. A writ of mandamus generally is not available to direct a state official to perform constitutional duties. Walker v. Munro, 124 Wash.2d 402, 407-08, 879 P.2d 920 (1994). Declaratory judgment in the superior court is appropriate.
[2] The issue is not taxes but contributions in the nature of insurance premiums. Proponents of EHB 2901 asserted that the act would merely adjust the premiums among employers to more accurately reflect the risk of unemployment in certain industries. Br. of Intervenor-Respt's at 22