[No. 23647. *En Banc.* November 23, 1932.]

NORTH BEND STAGE LINE, INC., *Petitioner,* v. THE DEPARTMENT OF PUBLIC WORKS *et al., Respondents.*[1]

[1]Reported in 16 P. (2d) 206.

218

*Poe, Falknor, Falknor & Emory,* for petitioner.

*The Attorney General* and *John C. Hurspool, Assistant,* for respondent Department of Public Works.

*Cleland & Clifford,* for respondent Washington Motor Coach Co.

*E. W. Anderson, Amicus Curiae.*

PARKER, J.—This proceeding was commenced as a statutory review proceeding in this court by the petitioner, North Bend Stage Line, Inc., against our state department of public works and the Washington Motor Coach Company, seeking review and reversal of an order of that department rendered against the stage line. Review of the order is sought directly in this court under the provisions of chapter 119, Laws of 1931, p. 363, amending Rem. Comp. Stat., §§ 10428, 10429, which has the effect, if constitutional, of divesting the superior court of its reviewing jurisdiction over the department, and vesting jurisdiction in that behalf directly and exclusively in this court.

It is contended and ably argued by counsel for the coach company, and counsel appearing as *Amicus Curiae,* that chapter 119, Laws of 1931, p. 363, is unconstitutional, in that it makes this court the court of original review of the orders of the department and divests the superior court of jurisdiction in that behalf, and that, therefore, this court is without juris-

diction as therein prescribed. It is contended and ably argued to the contrary by counsel for the stage line and other counsel in another proceeding of the same nature pending in this court.

That chapter reads, in so far as need be here quoted, as follows:

"Section 1. That section 10428 of Remington's Compiled Statutes be amended to read as follows:

"Section 10428. Any complainant or any public service company affected by any order of the department of public works (save and except orders determining the amount of reparation and/or overcharge), and deeming said order to be contrary to law, may, within thirty days after the service of the order upon him, or it, apply to the chief justice of the supreme court of the State of Washington for a writ of review, for the purpose of having the reasonableness and lawfulness of said order inquired into and determined. Such writ shall be made returnable not later than thirty days from and after the date of the issuance thereof, unless upon notice to all parties affected a further time be fixed by the chief justice, and shall direct the department to certify its record in the case to the supreme court. The cause shall be heard by the court at such time subsequent to the return day as the court shall direct. Said cause shall be heard by the court upon the record made before the department and certified to by said department and shall consist of a transcript of the testimony, together with all exhibits introduced or offered and rejected, and a transcript of the proceedings before the department. Briefs and abstract (where the statement of facts contains over 100 pages) shall be prepared, served and filed in conformity with the rules of the supreme court governing appeals, except that the time for the service and filing of the abstract and opening brief as provided in said rules shall run from the day of the issuance of the writ by the chief justice as hereinbefore provided. The general laws relating to appeals to the supreme court shall, so far as applicable and not in conflict with the provisions of this act, apply to

writs of review taken under the provisions of this act. Upon such hearing the supreme court shall enter such judgment as it deems proper, and the court may, in its discretion, remand any cause which is reviewed by it to the department for further action.

"No court of this state (except the supreme court to the extent herein specified) shall have jurisdiction to review, reverse, correct or annul any order or decision of the department or to suspend or delay the execution or operation thereof, or to enjoin, restrain or interfere with the department in the performance of its official duties: . . ."

Section 2 amends Rem. Comp. Stat., § 10429, and provides for suspending orders of the department pending review thereof. These sections, as unamended, provide for review of orders of the department in the superior court substantially as, by these amendments, they provide for such review in this court. Section 3 repeals Rem. Comp. Stat., § 10430, relating to appeal from the superior court to this court.

The jurisdiction of this court, so far as need be here noticed, is by article IV, § 4, of our state constitution, prescribed as follows:

"The supreme court shall have original jurisdiction in habeas corpus and quo warranto and mandamus as to all state officers, and appellate jurisdiction in all actions and proceedings, excepting that [here follow certain exceptions not necessary to notice]. The supreme court shall also have power to issue writs of mandamus, review, prohibition, habeas corpus, certiorari, and all other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction."

The jurisdiction of the superior court, so far as need be here noticed, is, by article IV, § 6, of our state constitution, prescribed as follows:

"The superior court shall have original jurisdiction in all cases in equity and in all cases at law which involve the title or possession of real property, or the legality of any tax, impost, assessment, toll, or municipal fine, and in all other cases in which the demand or the value of the property in controversy amounts to one hundred dollars, . . . Said courts and their judges shall have power to issue writs of mandamus, quo warranto, review, certiorari, prohibition, and writs of habeas corpus, . . ."

These constitutional provisions render plain the constitutional intent to make the supreme court the court of general appellate jurisdiction, giving to it certain limited original jurisdiction; and to make the superior court the court of general original jurisdiction.

■ Now, what is the real nature of the review provided for by chapter 119, Laws of 1931, p. 363? Its real nature seems to us to be that of appeal or writ of error rather than that of review or certiorari, though in that chapter it is called "review;" this, because the statute makes the issuance of the writ and the review thereunder a matter of right in the applicant conceiving himself to be injured by an order of the department which he seeks to have reviewed. Such was the right of an applicant for writ of error at common law, and such is the right of an appellant under appeal statutes which have largely taken the place of writ of error; 3 C. J. 299, 303; while certiorari, in the absence of statute broadening its purpose, is a matter of discretion in the court to which application therefor is made. 11 C. J. 128; 5 R. C. L. 254. So it seems plain to us that, by chapter 119, Laws of 1931, p. 363, the legislature has assumed to give the right of appeal directly from an order of the department to this court.

■ Now, recurring to the constitutional appeal jurisdiction of this court, we have seen that such jurisdiction is prescribed to be "in all actions and proceedings," with certain limited exceptions. This, we are of the opinion, means appellate jurisdiction in "actions and proceedings" of a purely judicial nature, which have been determined in some judicial court established by the constitution or in pursuance thereof. Whether such appellate jurisdiction is exclusively from the superior court or may be from some inferior judicial court established by the constitution or in pursuance thereof, we need not now inquire.

Reading the whole of the above quoted provisions of article IV of the constitution, we are led to the conclusion that this is, at all events, the constitutional limit of the appellate jurisdiction of this court, which the legislature does not have the power either to expand or limit. Authorities presently to be noticed, we think, support this conclusion.

Let us, for a moment, treat chapter 119, Laws of 1931, p. 363, as assuming to confer original review jurisdiction upon this court directly by review or certiorari. When the judiciary article IV was, in 1889, adopted as part of our constitution upon admission of our state into the Union, there was no statutory review or certiorari proceeding then in existence in the territory of Washington, other than the statutory certiorari for the review of proceedings determined by justices of the peace; which statutory provision was, in substance, a writ of error, since the right to remove the proceedings to the district court by such writ was one of right in the applicant; the writ being issued by the clerk of the district court "as of course," upon proper application therefor. See Code of 1881, §§ 1849-1857, and Hill's Code, §§ 1621-1629.

In 1895, the legislature passed an act entitled, "An Act regulating special proceedings of a civil nature," being chapter LXV, Laws of 1895, p. 114. That act relates to "certiorari," therein called "review," and also to "mandamus" and "prohibition." That act has remained in force up to the present time. See Rem. Comp. Stat., §§ 999-1033, and same sections in Rem. Rev. Stat. of 1932. That act broadened the relief obtainable by those remedies at the common law; that is, as existing at the time of the adoption of article IV of our constitution in 1889, which has remained unchanged.

In *State ex rel. Amsterdamsch Trustees Kantoor v. Superior Court,* 15 Wash. 668, 47 Pac. 31, 55 Am. St. 907, 37 L. R. A. 111, decided in 1896, there was drawn in question the power of this court to issue a writ of prohibition restraining the superior court from proceeding in a cause in excess of its jurisdiction. It was argued that this court could issue such a writ only when necessary to the exercise of its appellate jurisdiction; and that the issuance of such a writ as an act of original jurisdiction rested exclusively in the superior court. This argument seems to have been rested upon the concluding portions of the above quotations from sections 4 and 6 of article IV of the constitution.

It was in that case held that the language of those sections gave this court original jurisdiction in prohibition, apart from its appellate jurisdiction, to restrain the superior court from proceeding in excess of its jurisdiction. Judge Anders, speaking for the court in that case, following his noticing of these constitutional provisions, said:

"It thus appears that the jurisdiction of the supreme court and of the superior courts of this state is expressly defined by the constitution, and reference

must therefore be had to that instrument in order to determine the question of jurisdiction in any particular case; and it will be observed that by the terms of the constitution both this court and the superior courts are empowered to issue writs of prohibition.''

While that decision was rendered after the passage of the special proceedings act of 1895, it did not expressly decide whether the writ of prohibition there issued by this court was considered by the court as the common law writ or the broader statutory writ provided for in the special proceedings act of 1895. In view of the decision being rested upon the theory of this court having original constitutional jurisdiction to issue the writ, apart from its appellate jurisdiction, the decision at least inferentially suggests that the court then regarded the writ as the common law writ existing at the time of the adoption of article IV of the constitution. It was, however, later so held by this court.

In *Winsor v. Bridges,* 24 Wash. 540, 64 Pac. 780, there was drawn in question the nature of this court's prohibition jurisdiction; that is, whether it was limited to the common law writ as existing at the time of the adoption of the judiciary article of our constitution, or as broadened by the special proceedings act of 1895. The relief sought was such as could be awarded only under prohibition as prescribed by the special proceedings act of 1895.

That statutory prohibition was in that case held not to be within the jurisdiction of this court, and the proceeding was accordingly dismissed. Judge White, in speaking for the court, so holding, said: ''This statutory writ of prohibition is broader in its purposes than the writ of prohibition at common law,'' and, while recognizing that there was, at the time of the adoption of our constitution, a territorial statute

relating to prohibition, he observed that the statute "substantially defines the writ as it existed at common law." He further said:

"The original jurisdiction of this court is fixed by constitutional limitations, and is derived from the constitution, and not in pursuance of any legislative enactment. In the case of *Marbury v. Madison,* 1 Cranch. 157, the supreme court of the United States decided that such court derived its jurisdiction from the United States constitution; that it was not within the power of Congress to confer further or additional jurisdiction upon that court. The distinction drawn between the federal and state governments in matters of legislation, that the former is one of delegated powers, while the latter is one of limitations, does not affect the reasoning in *Marbury v. Madison, supra,* as applicable to the case at bar, that this court's original jurisdiction must be measured by the constitution of the state from which it derives its existence and power. . . . The superior court has jurisdiction over 'such special cases and proceedings as are not otherwise provided for.' Article 4, § 6, of the constitution. While it is provided in the same section that the superior court has jurisdiction to issue writs of prohibition, meaning, undoubtedly, the common-law writ, there is nothing in the constitution forbidding the legislature, in the exercise of its legislative powers, from providing a proceeding analogous to the writ of prohibition, and making the same applicable in arresting executive, administrative, or legislative action by tribunals, corporations, boards, or persons. But when this is done the original jurisdiction to issue such writs is in the superior court, under the clause above quoted from § 6, art. 4, of the constitution, and in such matters this court can only exercise appellate jurisdiction."

Our decisions in *State ex rel. Murphy v. Taylor,* 101 Wash. 148, 172 Pac. 217, and *State ex rel. Harris v. Hinkle,* 130 Wash. 419, 227 Pac. 861, are in harmony with these views.

So our own decisions lend strong support to the view that the whole of the appellate, as well as the original, jurisdiction of this court, is to be found in article IV, § 4, of our constitution, though those decisions consider only the jurisdiction of this court in prohibition. Manifestly, the writ of certiorari mentioned in the constitution also means such writ as existed under that name at common law. Just what the writ of review mentioned in the constitution means is indeed difficult to determine, since there was no such writ at common law; 54 C. J. 748; and there was no such statutory writ at the time of the adoption of the judiciary article of our constitution. We think it at least safe to say that, whatever jurisdiction this court could exercise by the issuance of such a writ, such jurisdiction would be discretionary as in certiorari.

In *Clark v. Utilities Commission*, 78 Colo. 48, 239 Pac. 20, Justice Burke, speaking for the court, made these enlightening observations:

"Article 6, § 2, of our Constitution, reads:

" 'The Supreme Court, except as otherwise provided in this Constitution, shall have appellate jurisdiction only. . . .'

"The phrase 'appellate jurisdiction,' as here used, relates to the review, by a superior court, of the final judgment, order, or decree of some inferior court. *Ex parte B. & B. R. Co.*, 39 Ark. 82, 87; *Brownsville v. Basse*, 43 Tex. 440, 449.

" 'The appellate jurisdiction spoken of in the Constitution is evidently that kind of appellate jurisdiction which had theretofore been exercised by the highest judicial tribunals of the respective states, and not an unlimited appellate jurisdiction over any matter or thing arising either in courts or out of courts, which the wisdom or folly of any future Legislature might see fit to confer or impose upon it.' *Hubbell v. McCourt*, 44 Wis. 584, 587.

"Were it otherwise, appeals and writs of error might, under the cloak of 'appellate jurisdiction,' be made to lie to this court from the final decision of every board, bureau, commission and town council in the state. The Public Utilities Commission is not a court. *People ex rel. v. Colo. T. & T. Co.* 65 Colo. 472, 480, 178 Pac. 6.

"Hence the jurisdiction here involved is original, not appellate.

"The only original jurisdiction conferred upon this court is by article 6, section 3, of the Constitution, which reads in part:

" 'It shall have power to issue writs of habeas corpus, mandamus, quo warranto, certiorari, injunction, and other original and remedial writs, with authority to hear and determine the same.' *Wheeler v. N. C. Irr. Co.,* 9 Colo. 248, 249, 11 Pac. 103; *Whipple, Sec'y of State, v. Stevenson,* 25 Colo. 447, 451, 55 Pac. 188.

"The original jurisdiction thus conferred is discretionary. *In re Rogers,* 14 Colo. 18, 22 Pac. 1053. It may neither be enlarged nor abridged by the Legislature. *Leppel v. Dist. Court Garfield Co.,* 33 Colo. 24, 27, 78 Pac. 682.

"Hence the attempt by this writ, to enforce the supreme court to take original jurisdiction in suits involving the validity of decisions and orders of the commission is null and void."

In addition to the authorities therein noticed by Justice Burke, the following lend support to the conclusion we here reach: *Neil v. Public Utilities Commission,* 32 Ida. 44, 178 Pac. 271; *Camron v. Kenfield,* 57 Cal. 550; *Pate v. Wilmington & W. Railroad Co.,* 122 N. C. 877, 29 S. E. 334; *In re Cumberland Power Co.,* 147 Tenn. 504, 249 S. W. 818; *Winner Milling Co. v. C. & N. W. Ry. Co.,* 43 S. D. 574, 181 N. W. 195; *Maynard v. Workmen's Compensation Board,* 210 Ky. 708, 276 S. W. 812.

The foregoing considerations lead us to these conclusions: (1) that chapter 119, Laws of 1931, p. 363,

is unconstitutional in so far as it assumes to confer upon this court the reviewing jurisdiction therein prescribed, which is, as we have seen, in substance, appellate jurisdiction; (2) that chapter 119, Laws of 1931, p. 363, is unconstitutional in so far as it assumes to deprive the superior court of its constitutional review and certiorari jurisdiction; and (3) that Rem. Comp. Stat., §§ 10428, 10429 and 10430, remain unsuperseded and unrepealed by chapter 119, Laws of 1931, p. 363. Our reasons supporting these first and second conclusions have been already set forth. We may add that this third conclusion has sufficient support in our decision in *Corwin Investment Co. v. White,* 166 Wash. 195, 6 P. (2d) 607.

Now, what disposition should be made by us of this proceeding? Since it has been brought into this court in pursuance of chapter 119, Laws of 1931, p. 363, and that act is now by us held to be unconstitutional in the respects above noticed, a superficial consideration of the question naturally suggests that the proceeding should be dismissed for want of jurisdiction in this court to entertain it. But we have seen that, under the constitution, this court, as well as the superior court, has original certiorari jurisdiction. We have also seen that this court's certiorari jurisdiction is the common law certiorari jurisdiction, and that the exercise of such jurisdiction is discretionary in the court possessing it, to which application is made to exercise it.

The record before us warrants our assuming that the stage line has now, by lapse of time, lost its right of review in the superior court under Rem. Comp. Stat., §§ 10428, 10429 and 10430, though those sections are unrepealed because of the unconstitutionality of the attempted amendment of §§ 10428 and 10429, and the express repeal, incidental thereto, of § 10430 by

chapter 119, Laws of 1931, p. 363. Under the circumstances, we are of the opinion that we should now regard the loss of that right of review without fault on the part of the stage line; the constitutionality of chapter 119, Laws of 1931, p. 363, not having been challenged in any respect until after the bringing of this proceeding into this court under the provisions of that chapter.

This leads us to the conclusion that, exercising our discretion, we should now retain and dispose of this proceeding upon the merits, under our constitutional certiorari jurisdiction. We may add that we are led to so exercise our discretion in this behalf more because of the situation in which we find the stage line than because of the nature of the merits of the controversy; in other words, we would not so exercise our discretionary certiorari jurisdiction were there no other consideration present than the nature of the merits of this controversy.

The decision of the supreme court of Michigan in *Rapid Ry. Co. v. Michigan Public Utilities Commission*, 225 Mich. 425, 196 N. W. 518, lends support to this conclusion, though we do not cite that case as being exactly in point. Indeed, no decision has been brought to our attention which is exactly in point.

The following, we think, is a sufficient summary of the facts touching the merits of this controversy: The several public service stage services here to be noticed are over portions of the principal state highway extending from Seattle to Ellensburg. The stations thereon to be noticed, named from west to east, are: Seattle, Easton, Cle Elum and Ellensburg. We are here particularly concerned with local service between Easton and Cle Elum, a distance of some twelve miles, as the right to maintain that local service was awarded

and limited by an order of the department made May 19, 1926.

In April, 1926, the United States government had commenced construction of the so-called Kittitas Reclamation Project. The principal unit of that construction consisted of a large dam near Easton. The large number of persons employed upon that unit of the construction and its carrying on appeared to call for a temporary local passenger and express stage service between Easton and the much larger town of Cle Elum over the state highway between those two towns. At that time the predecessors in interest of the stage line had a certificate of public convenience and necessity authorizing them to render passenger and express service between Seattle and Easton. At that time, the coach company had a certificate of public convenience and necessity authorizing it to render passenger and express service over state highways east of Ellensburg.

The predecessors in interest of the stage line then sought a certificate authorizing them to furnish local passenger and express stage service between Easton and Cle Elum. The coach company then sought a certificate authorizing it to furnish local passenger and express service between Ellensburg and Easton. This, it will be noticed, included such service between Cle Elum and Easton. Upon a joint hearing of these applications before the department, it entered its order dated May 19, 1926, granting to both the predecessors in interest of the stage line and the coach company, "during the construction period of the Kittitas Reclamation Project," the right to render passenger and express service between Cle Elum and Easton. In addition to the above quoted limitation as to the period of such grant, that order contained the following:

"Upon the completion of the Kittitas Reclamation Project, the department will hold further hearing or hearings, and then determine whether or not public convenience and necessity requires the continuance of motor vehicle service between Cle Elum and Easton, Washington."

In June, 1931, the coach company filed with the department its petition, praying that the right of the stage line to render service between Easton and Cle Elum be cancelled, alleging that the construction of the Kittitas Reclamation Project had then been completed. Thereupon, the department entered its order to show cause by which it expanded the issue so as to include the question of the cancellation of the service right as granted to both the predecessors in interest of the stage line and the coach company, by the order of May 19, 1926.

Thereafter, a hearing was had before the department accordingly, resulting in an order of the department cancelling both public service rights of the stage line and the coach company given by the order of May 19, 1926; this, upon the theory that there was no longer any public necessity for the local service contemplated by that order, the department finding that the construction work on the project, within the meaning of its order of May 19, 1926, had been completed. It is review and reversal of this order that the stage line seeks by this proceeding.

It is plain that the merits of this controversy depend upon the fact as to whether or not the Kittitas Reclamation Project is now completed within the meaning of the department's order of May 19, 1926. The circumstances attending the making of that order, we think, render it fairly plain that the words, "during the construction period of the Kittitas Reclamation Project," as used therein, mean the completion

of the construction of the dam unit of the project then under construction near Easton. That, manifestly, was the only consideration rendering necessary the local service granted by that order to be rendered between Cle Elum and Easton. We do not see any ground for court interference with the present finding of the department that the Kittitas Reclamation Project is completed within the meaning of the order of May 19, 1926, and the present conclusion of the department that the service contemplated by that order is no longer a public necessity.

The record before us indicates that the coach company has through-service certificate rights enabling it to render service between Easton and Cle Elum independent of the department order of May 19, 1926. With this, however, we are not here concerned. The relief sought by the stage line in this proceeding is denied, and the proceeding is dismissed.

TOLMAN, C. J., MAIN, BEALS, and HOLCOMB, JJ., concur.

MITCHELL, MILLARD, and STEINERT, JJ. (concurring in the result)—We concur in that portion of the majority opinion holding chapter 119, Laws of 1931, p. 363, unconstitutional in the respects mentioned. That conclusion necessitates, in our opinion, a dismissal of this proceeding for the lack of jurisdiction. By plain provisions of the constitution, the supreme court of this state is an appellate court, except in cases different in kind from the present one.