200 P.3d 701 (2009)
COMMUNITY CARE COALITION OF WASHINGTON; Home Care of Washington, Inc.; The Fredrickson Home; Cynthia O'Neill, A Washington Citizen and Taxpayer; Ron Ralph and Lois Ralph, husband and wife and Washington Citizens and Taxpayers, Petitioners,
v.
Sam REED, Secretary of State, Respondent, and
Linda Lee and People for Safe Quality Care, Intervenors/Respondents.
No. 81857-6.
Supreme Court of Washington, En Banc.
Argued September 4, 2008.
Decided February 5, 2009.
*702 Kathleen Dell Benedict, Narda D. Pierce, Benedict Garratt Pond & Pierce, PLLC, Olympia, WA, for Petitioners.
Jeffrey Todd Even, Maureen A. Hart, Attorney General's Office, Olympia, WA, for Respondent.
Eric D. `Knoll' Lowney, Smith & Lowney PLLC, Michael Craig Subit, Frank Freed Subit & Thomas LLP, Seattle, WA, for Intervenors/Respondents.
Shawn Timothy Newman, Attorney at Law, Olympia, WA, for Amicus Curiae on behalf of Initiative and Referendum Institute.
ALEXANDER, C.J.
¶ 1 Several petitioners led by the Community Care Coalition of Washington filed an original action in this court seeking to compel Secretary of State Sam Reed to accept petitions submitted for Initiative Measure No. 1029 (I-1029) as petitions for an initiative to the legislature. Petitioners conversely ask us to prohibit the secretary of state from certifying I-1029 as an initiative to the people for placement on the November 2008 general election ballot. We heard the matter en banc on September 4, 2008, and issued an order on September 5 dismissing the petition with an explanatory opinion to follow in due course. This is our opinion explaining our order.

FACTS
¶ 2 The pertinent facts are undisputed.[1] On March 12, 2008, Linda Lee filed with the secretary of state's office a proposed initiative dealing with background checks and training and certification of long-term care *703 workers. On the accompanying form affidavit, Lee marked the box indicating that the measure was to be submitted to the "people." Agreed Statement of Facts, Ex. A. The secretary of state's office thereafter processed the proposed initiative in every respect as an initiative to the people, listing it as such on its website. The code reviser issued a certificate of review, and Lee filed the final version of the proposed initiative on March 28, 2008. On the same date, the secretary of state's office assigned the initiative the number 1029 (from a list of serial numbers reserved for initiatives to the people). See RCW 29A.72.040. The attorney general's office then drafted a ballot title and a ballot measure summary. Though given the opportunity to do so, Lee evidently did not have the secretary of state's office review the final petition form.
¶ 3 Lee and other proponents of I-1029 prepared and circulated petitions for voter signatures. Below the title graphics stating "YES" to "I-1029," the petition set forth the "BALLOT TITLE" as prepared by the attorney general's office. Agreed Statement of Facts, Ex. M. Then came the "BALLOT MEASURE SUMMARY." Id. Following that, the petition recited the required language addressed "To the Honorable Sam Reed, Secretary of State of the State of Washington." Id. The language required differs depending on whether the initiative is directed to the people or to the legislature. See RCW 29A.72.120, .110. The petition here had a long paragraph directing that the initiative "be transmitted to the legislature of the State of Washington at its next ensuing regular session, and [that] the legislature [] enact said proposed measure into law." Agreed Statement of Facts Ex. M (emphasis added).
¶ 4 On the reverse side of the petition, immediately above the text of the initiative, a subtitle stated, "BE IT ENACTED BY THE PEOPLE OF THE STATE OF WASHINGTON." Id. The body of the initiative included expressions of "the intent of the people" in enacting the petition. Id. In numerous places the initiative would mandate the Department of Social and Health Services and the Department of Health to implement rules by August 1, 2009. It would also require innovative training methods until December 31, 2009, and certain sections of the initiative are contingent on proposed 2008 legislation taking or not taking effect. The act implemented by the initiative is to be called the "better background checks and improved training for long-term care workers for the elderly and persons with disabilities initiative of 2008." Id. The petition also designated a final mailing deadline of June 25, 2008, which corresponded to the final date for mailing petitions for an initiative to the people.
¶ 5 Around June 25, 2008, a citizen brought a blank I-1029 petition to the secretary of state's office and pointed out that language on the face of the petition indicated it was an initiative to the legislature. On July 2, petitioner Community Care Coalition of Washington urged the secretary of state to reject the I-1029 petitions. On July 3, the last day petitions for initiatives to the people could be filed with the secretary of state, Lee submitted I-1029 petitions to that office for filing and certification.
¶ 6 On July 14, a deputy solicitor general responded to Community Care Coalition of Washington on behalf of the secretary of state, acknowledging its concerns but informing it that the secretary had decided to process the petitions as supporting an initiative to the people notwithstanding the erroneous language in the petitions. The deputy solicitor general wrote that there was "no doubt that those who filed and circulated the petitions on I-1029 intended to file and process an initiative to the people and built their petition campaign around the constitutional deadlines for this form of an initiative." Agreed Statement of Facts Ex. O, at 3. The deputy solicitor general indicated, further, that he was not aware of any evidence that the proponents or the press ever described the initiative as one to the legislature or noted the potential ambiguity on the face of the petition. Nor was there any basis, he said, to believe that the form of the petition influenced the number of valid signatures gathered for the initiative. The deputy solicitor general further wrote that rejecting the petitions "would fail to afford Washington's voters the opportunity to consider, and either *704 approve or reject the measure, where a constitutionally requisite number of qualified voters express support for its enactment to be considered." Id.
¶ 7 On July 18, petitioner Cynthia O'Neill asked the attorney general by letter to file an action against the secretary of state to prevent him from processing the I-1029 petitions as supporting an initiative to the people and to require him instead to process the measure as an initiative to the legislature. Petitioners then filed this original action in this court on July 22. The solicitor general subsequently informed petitioners that the secretary of state had acted within his lawful discretion and that the attorney general's office would defend the secretary in this matter.
¶ 8 Lee and People for Safe Quality Care, the official committee supporting I-1029, have intervened in the action, and the Initiative and Referendum Institute has filed an amicus curiae brief supporting the petition. After we denied petitioners' motion for an emergency injunction, the secretary of state certified I-1029 as an initiative to the people on August 13, 2008. The voters approved I-1029 in the November 4, 2008, general election.

ANALYSIS
¶ 9 The initiative is "[t]he first power reserved by the people." CONST. art. II, § 1(a). This power is self-executing, and the legislature's authority to affect the initiative process is limited to facilitating its operation. CONST. art. II, § 1(d). Similarly, the authority of the judiciary over the process is limited, since questions regarding the initiative process are political, not judicial, unless express statutory or constitutional laws make the question judicial. Schrempp v. Munro, 116 Wash.2d 929, 932, 809 P.2d 1381 (1991) (quoting State ex rel. Donohue v. Coe, 49 Wash.2d 410, 417, 302 P.2d 202 (1956)).
¶ 10 There are two types of initiatives, those to the legislature and those to the people. CONST. art. II, § 1(a). Apart from a general requirement that every initiative petition set forth the full text of the proposed measure, the constitution is silent on the precise form of such petitions. Id. Consistent with its constitutional authority to facilitate the initiative process, the legislature enacted provisions relating to the initiative process and petition forms. See ch. 29A.72 RCW.
¶ 11 Whether the petition is for an initiative to the legislature or for an initiative to the people, the petition "must be substantially" in the form provided under RCW 29A.72.110 (initiative to the legislature) or RCW 29A.72.120 (initiative to the people). See RCW 29A.72.170. These provisions, in turn, specify the following headings: "INITIATIVE PETITION FOR SUBMISSION TO THE LEGISLATURE" or "INITIATIVE PETITION FOR SUBMISSION TO THE PEOPLE." RCW 29A.72.110, .120. If the initiative is to be submitted to the legislature, it must state that the signers direct the secretary of state to transmit the measure to the "legislature" and that they "petition the legislature to enact" the proposed measure. RCW 29A.72.110. If the initiative is to be submitted to the people, it must state that the signers direct the proposed measure "be submitted to the legal voters of the State of Washington for their approval or rejection at the general election." RCW 29A.72.120.
¶ 12 The I-1029 petition was flawed. To the extent it was meant to be a petition for an initiative to the people, it lacked the capitalized subtitle indicating that it was an "INITIATIVE PETITION FOR SUBMISSION TO THE PEOPLE." RCW 29A.72.120. And the language of instruction directed to the secretary of state was in the form required for initiatives to the legislature. But to the extent the petition identified the initiative as one to the legislature, it failed to meet the requirements of RCW 29A.72.110 by not prominently announcing that it involved an "INITIATIVE PETITION FOR SUBMISSION TO THE LEGISLATURE."
¶ 13 The issue now is whether this court should intervene in the secretary of state's decision to treat the petition as one supporting an initiative to the people. Petitioners' challenge to the secretary's action is two-pronged, but both arguments focus on RCW *705 29A.72.170. That statute states in relevant part that the secretary "may refuse to file any initiative ... petition being submitted" if "the petition does not contain the information required by RCW 29A.72.110 [or] 29A.72.120." RCW 29A.72.170(1). But if no ground for refusal exists, the secretary "must accept and file the petition." RCW 29A.72.170. Petitioners argue that because the petition did not contain the language required by RCW 29A.72.120, directing the secretary to submit the initiative to the people, the secretary erroneously certified the initiative for placement on the November 2008 ballot. Conversely, petitioners argue that because the petition did contain the instructional language required for initiatives to the legislature, the secretary had no choice but to accept and file the petition as one for an initiative to the legislature.
¶ 14 At the outset, petitioners acknowledge they have no statutory right to challenge the secretary's decision to accept and file the petition as a petition for an initiative to the people. The statutes permit a challenge only to the secretary's refusal to file a petition, and that right of challenge extends only to the persons submitting the petition for filing. RCW 29A.72.180; Schrempp, 116 Wash.2d at 934-35, 809 P.2d 1381. Petitioners instead seek to invoke this court's jurisdiction by seeking a writ of mandamus or a writ of certiorari requiring the secretary to certify I-1029 to the legislature. See CONST. art. IV, § 4; Wash. State Labor Council v. Reed, 149 Wash.2d 48, 54, 65 P.3d 1203 (2003).
¶ 15 Considering first mandamus, a writ of mandamus may be issued to compel a state official to perform an act the law clearly requires as part of the official's duties. RCW 7.16.160; Wash. State Council of County & City Employees, Council 2 v. Hahn, 151 Wash.2d 163, 166-67, 86 P.3d 774 (2004); Walker v. Munro, 124 Wash.2d 402, 408, 879 P.2d 920 (1994). And mandamus may also be issued to prohibit an official from performing an otherwise mandatory act. Wash. State Labor Council, 149 Wash.2d at 55, 65 P.3d 1203. Mandamus has been used to consider actions of the secretary of state in relation to initiatives and referenda. Id. at 54-55, 65 P.3d 1203; Wash. State Farm Bureau Fed'n v. Reed, 154 Wash.2d 668, 672, 115 P.3d 301 (2005). But mandamus will not lie to compel a discretionary act. In re Pers. Restraint of Dyer, 143 Wash.2d 384, 398, 20 P.3d 907 (2001). As indicated, the secretary "may" refuse to file an initiative petition if the petition omits the information for initiatives to the people required by RCW 29A.72.120. RCW 29A.72.170(1). The secretary therefore has "discretionary authority" to decide whether to reject a noncomplying petition. Schrempp, 116 Wash.2d at 934, 938, 809 P.2d 1381. Thus, even accepting petitioners' assertion that the petition here did not substantially comply with the statutory requirements for initiatives to the people, because the secretary had no clear mandatory duty to reject the petition on that basis, mandamus does not lie to compel him to do so.
¶ 16 But as discussed, petitioners also argue that because the secretary "must accept and file" a petition that contains the information required, RCW 29A.72.170, and because here the petition contained the required information for initiatives to the legislature, the secretary was required to accept the petition as a petition for an initiative to the legislature. As related above, however, the petition did not wholly conform to the requirements of RCW 29A.72.110 for initiatives to the legislature. And further, the numerical designation of the measure, its proposed legislative title, the language of the initiative measure itself, the proposed effective dates of some of its provisions, and the petition mailing deadline all suggested the initiative was intended for submission to the people. In short, the petition was sufficiently ambiguous that the secretary was not duty-bound to accept it only as a petition for an initiative to the legislature. Moreover, RCW 29A.72.170 presupposes that a petition has been submitted by a proponent, hence the companion provision in RCW 29A.72.180 allowing a proponent to challenge the secretary's refusal to file a petition. In this case, no proponent seeks to advance an initiative to the legislature. Petitioners seek to use the writ of mandamus to pursue relief that *706 would have been available only to proponents of an initiative to the legislature.[2]
¶ 17 As discussed, petitioners also seek a writ of certiorari. While this court has original jurisdiction in habeas corpus, quo warranto, and mandamus as to all state officers, it also has the power to issue writs of certiorari "and all other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction." CONST. art. IV, § 4. Petitioners rely on North Bend Stage Line v. Department of Public Works, 170 Wash. 217, 16 P.2d 206 (1932), in urging us to exercise our constitutional jurisdiction to review directly the secretary of state's filing of the I-1029 petitions. In our view, petitioners read North Bend too broadly. In that case, we struck down a statute giving this court exclusive jurisdiction to review decisions of the Department of Public Works, holding that the court's appellate jurisdiction permits review of decisions of only a purely judicial nature. Id. at 221-22, 16 P.2d 206. The decision had the effect of reviving a former statute that properly lodged review authority in the superior court. Id. at 228, 16 P.2d 206. But meanwhile the time for seeking superior court review had lapsed through no fault of the party seeking review. Id. Under those highly unusual circumstances, a majority of the court said it would review the department's order pursuant to the court's discretionary certiorari jurisdiction. Id. at 229, 16 P.2d 206. Finding no reason for judicial interference with the department's order, the court denied relief and dismissed the proceedings. Id. at 232, 16 P.2d 206. Soon thereafter, this court relied on North Bend in considering and reversing an otherwise unreviewable public works order. See generally Kitsap County Transp. Co. v. Dep't of Public Works, 170 Wash. 396, 16 P.2d 828 (1932).
¶ 18 The highly unusual circumstances confronted in North Bend are not present here. Perhaps more importantly, North Bend did not meaningfully address whether this court had jurisdiction to issue a writ of certiorari under article IV, section 4 of our constitution. Rather, the court considered a statutory writ of review filed directly in this court pursuant to the statute ultimately held to be unconstitutional. See North Bend, 170 Wash. at 218, 222, 16 P.2d 206. The court then filled the resulting vacuum by exercising its "constitutional certiorari jurisdiction" to review an administrative decision that would have otherwise been challenged in superior court. Id. at 229, 16 P.2d 206. That narrow holding does not support the broader proposition that a writ of certiorari may issue for direct review of a decision of the secretary of state. As we indicated in a later decision, North Bend generally clarified that under article IV, section 4, this court is the court of general appellate jurisdiction over judicial decisions, with limited original jurisdiction, while the superior court is the court of general original jurisdiction with primary power to review actions of administrative agencies. Dep't of Highways v. King County Chapter, Wash. Envtl. Council, 82 Wash.2d 280, 284-85, 510 P.2d 216 (1973). Article IV, section 4 grants this court the power to issue writs of certiorari only as "necessary and proper to the complete exercise of its appellate and revisory jurisdiction." While modern courts have searched in vain for what is encompassed by the term "revisory jurisdiction," see Morrison v. Superior Court, 10 Ariz.App. 601, 461 P.2d 170 (1969), we reject the proposition that this court has the constitutional power to directly review and revise a decision of the secretary *707 of state, as opposed to a decision of this court or a lower tribunal.
¶ 19 Our decision in Schrempp does not aid petitioners. The appellants there argued that this court should exercise its inherent equity power to intervene in cases of election fraud and wrongdoing. Schrempp, 116 Wash.2d at 936-37, 809 P.2d 1381. We first responded that the appellants' broad statement of principle excluded their own claim, since the case involved neither election fraud nor wrongdoing. Id. at 937, 809 P.2d 1381. But we saw a more fundamental flaw in this argument. We found it necessary to more thoroughly explain this court's power of review: "`[d]espite the unavailability of either direct or discretionary review, we may, in unusual circumstances, exercise our inherent power ... to determine if the trial court's decision is arbitrary, capricious, or contrary to law.'" Id. (emphasis added) (quoting Kreidler v. Eikenberry, 111 Wash.2d 828, 837, 766 P.2d 438 (1989)). We stated that the appellants had confused this simple standard for reviewing trial court decisions with the constitutional question of the power and extent of judicial review. Id.
¶ 20 Thus, Schrempp does not stand for the proposition that this court can directly review a decision of the secretary of state to determine whether it is arbitrary or capricious or contrary to law.[3] Even assuming that the appellants' arguments in that case raised the question of inherent power to review, we held that their contention of arbitrary and capricious conduct failed. Id. Likewise, petitioners' claims here that the secretary acted arbitrarily, capriciously, or contrary to law fail. We have already seen that the secretary's decision here was not clearly contrary to the law, since he acted within his discretionary authority. See Schrempp, 116 Wash.2d at 934, 937, 809 P.2d 1381. The question then is whether his action was arbitrary and capricious, a "`willful and unreasoning action, without consideration and in disregard of facts or circumstances'." Id. at 938, 809 P.2d 1381 (internal quotation marks omitted) (quoting Kreidler, 111 Wash.2d at 837, 766 P.2d 438).
¶ 21 The agreed facts show Lee clearly intended an initiative to the people when she checked the corresponding box on the petition application form, and the secretary acknowledged that intent in processing and numbering the initiative as one to the people and in designating it as such on his office's website before the petition error came to light. Also, as discussed, the petition was ambiguous in that it could be interpreted as supporting either an initiative to the people or an initiative to the legislature. The face of the petition boldly proclaimed "YES" to "I-1029," followed by a "BALLOT TITLE" and a "BALLOT MEASURE SUMMARY." Agreed Statement of Facts, Ex. M. The fourdigit number designating the initiative could only indicate an initiative to the people. The popular title and language of the measure itself was reflective of an initiative to the people. Moreover, several provisions of the measure indicated effective dates consistent only with a voter initiative to be voted upon in November 2008. Significantly, the petition indicated a mail return deadline of June 25, 2008, consistent with an initiative to the people. In light of these undisputed facts, the secretary's decision to file the petitions as supporting an initiative to the people, as the sponsor intended, was not arbitrary and capricious.
¶ 22 The ambiguities in the petition also undercut amicus's contention that the will of the voters who signed the petitions will be thwarted if the initiative is submitted to the people rather than the legislature. To the contrary, all voters will have an opportunity to cast their votes for or against the initiative. Requiring the secretary of state to file the initiative as one to the legislature, contrary to the undisputed intent of the initiative sponsor, would surely frustrate the initiative rights of voters who signed the initiative believing it was directed to the people, a scenario as likely as its opposite.
¶ 23 In any event, this case is fundamentally about the secretary of state's discretion in processing initiative petitions. The secretary had a reasoned basis to exercise his statutory discretion and accept the petitions as supporting *708 an initiative to the people, notwithstanding the identified flaws. As in Schrempp, petitioners here fail to demonstrate grounds justifying the exercise of this court's narrow constitutional powers.[4]
¶ 24 Accordingly, the petition is dismissed.
WE CONCUR: CHARLES W. JOHNSON, BARBARA A. MADSEN, JAMES M. JOHNSON, DEBRA L. STEPHENS, TOM CHAMBERS, JJ.
FAIRHURST, J. (dissenting).
¶ 1 The majority concludes Secretary of State Sam Reed did not exceed the limits of his discretion by certifying Initiative Measure No. 1029 (I-1029) as a petition to the people despite the petition's failure to include the key requirement of RCW 29A.72.120, language directing the secretary of state to submit I-1029 to the people. Because I conclude the requirements of RCW 29A.72.120 limit the secretary of state's discretion by mandating that petitions substantially comply with that statute, I dissent.
¶ 2 The majority correctly observes that mandamus will not lie to compel a discretionary duty. Majority at 705 (citing In re Pers. Restraint of Dyer, 143 Wash.2d 384, 398, 20 P.3d 907 (2001)). Were the analysis to end there, however, the purpose of mandamus proceedings"`"to protect the rights, interests, and franchises of the state, and the rights and interests of the whole people, to enforce the performance of high official duties affecting the public at large"'" would be defeated. Wash. State Labor Council v. Reed, 149 Wash.2d 48, 54, 65 P.3d 1203 (2003) (quoting State ex rel. O'Connell v. Meyers, 51 Wash.2d 454, 459-60, 319 P.2d 828 (1957)) (quoting State ex rel. Malmo v. Case, 25 Wash.2d 118, 123, 169 P.2d 623 (1946)). In order to determine whether mandamus will lie, we must determine not only whether the duty is discretionary, but also the authorized boundaries of discretion.
Mandamus issues to compel an officer to perform a purely ministerial duty. It can not be used to compel or control a duty in the discharge of which by law he is given discretion. The duty may be discretionary within limits. He can not transgress those limits, and if he does so, he may be controlled by injunction or mandamus to keep within them. The power of the court to intervene, if at all, thus depends upon what statutory discretion he has. Under some statutes, the discretion extends to a final construction by the officer of the statute he is executing.
Work v. United States ex rel. Rives, 267 U.S. 175, 177, 45 S.Ct. 252, 69 L.Ed. 561 (1925).
¶ 3 The secretary of state has discretion to determine whether a petition satisfies the statutory requirements for filing. State ex rel. Harris v. Hinkle, 130 Wash. 419, 429, 227 P. 861 (1924). That discretion, however, is not unlimited. Id. at 435, 227 P. 861 (permitting withdrawals of signatures after petitions are preliminarily filed is a "manifest abuse of power"); Sudduth v. Chapman, 88 Wash.2d 247, 255, 558 P.2d 806, 559 P.2d 1351 (1977) (secretary of state abused discretion by not taking affirmative steps to correct irregularities in voter records which resulted in disenfranchisement). The majority rightly concludes the secretary of state's discretion to accept or reject petitions to the people is limited by RCW 29A.72.170. I differ from the majority in concluding that the mandatory language in RCW 29A.72.120 additionally *709 limits the secretary of state's discretion by prohibiting the acceptance of petitions to the people that do not substantially comply with RCW 29A.72.120. By assuming the secretary of state has discretion to accept a petition for an initiative to the people without first determining whether the petition has met the requirements of RCW 29A.72.120, the majority extends boundaries of the secretary of state's discretion beyond that authorized by chapter 29A.72 RCW.
¶ 4 RCW 29A.72.120 prescribes the form required for petitions to the people and mandates that petitions substantially comply with its requirements. It requires a statutory warning; a title; a capitalized subtitle identifying the initiative as one to the people; a paragraph set out in the statute which includes language directing the secretary of state to submit the petition to the people, the date of the election, a statement that the petitioners are legal voters who have personally signed the petition, the address of each petitioner, and a declaration that each petitioner has signed the petition only once; a declaration on the reverse side of the petition signed by the person circulating the petition; and a place for each petitioner to sign and print his name, address, and county in which he is registered to vote. RCW 29A.72.120. If a petition fails to include all the required information, the secretary of state has discretion to accept and file it under RCW 29A.72.170. If a petition to the people contains all of the information required by RCW 29A.72.120, bears sufficient signatures, and is timely filed, the secretary of state "must accept and file the petition." RCW 29A.72.170.
¶ 5 Read together, RCW 29A.72.120 and.170 limit the secretary of state's discretion by allowing him to reject petitions that do not contain all the information required by RCW 29A.72.120, preventing acceptance of those that do not at least "substantially" comply, and requiring acceptance of those that perfectly comply.
The statute provides that the Secretary of State may refuse to file a petition if it is not in the form required by the statute. The statute sets out a form of petition and requires that the petition be substantially in that form. Inherent in the decision of the Secretary of State to accept and file this petition was his determination that the petition was substantially in the form required.
Schrempp v. Munro, 116 Wash.2d 929, 937, 809 P.2d 1381 (1991) (citations omitted). Thus, whether the secretary of state has discretion to accept a petition to the people depends upon whether the petition substantially complies with RCW 29A.72.120. This is consistent with our policy of liberally construing statutes regulating the elective process in favor of the voters by overlooking technical noncompliance while strictly enforcing provisions that prevent fraud and disenfranchisement. Sudduth, 88 Wash.2d at 254-55, 558 P.2d 806.
¶ 6 We have defined substantial compliance as "`actual compliance in respect to the substance essential to every reasonable objective of [a] statute.'" Weiss v. Glemp, 127 Wash.2d 726, 731, 903 P.2d 455 (1995) (alteration in original) (internal quotation marks omitted) (quoting City of Seattle v. Pub. Employment Relations Comm'n, 116 Wash.2d 923, 928, 809 P.2d 1377 (1991)). Chapter 29A.72 RCW exists to facilitate the exercise of the people's initiative right. Schrempp, 116 Wash.2d at 932, 809 P.2d 1381. The question here is whether the language specifically designating the initiative as one to the people, as opposed to one to the legislature, is "`the substance essential to'" facilitating the initiative right. Weiss, 127 Wash.2d at 731, 903 P.2d 455 (internal quotation marks omitted) (quoting City of Seattle, 116 Wash.2d at 928, 809 P.2d 1377). I conclude that it is.
¶ 7 The distinction between petitions to the legislature and petitions to the people is important. An initiative to the people becomes the law of the state as it is written upon passage in the general election. The legislature may not amend the law for two years after its enactment except by a two-thirds majority of all members of each house. CONST. art. II, § 41. An initiative to the legislature allows the legislature to propose alternative legislation that will be placed before the voters along with the initiative. CONST. art. II, § 1(a). If the legislature *710 rejects the initiative, it will be placed before the voters at the next general election. Id. Even if the legislature enacts the measure, it is subject to additional review through the referendum process. Id.
¶ 8 Because the paths followed by initiatives directed to the people and those directed to the legislature are so different, the language on the petition identifying its path must be clear and direct. Chapter 29A.72 RCW provides a model form for the two types of initiatives to fulfill this important notice requirement. RCW 29A.72.110, .120. The only information required by RCW 29A.72.120 differentiating a petition to the people from a petition to the legislature is the capitalized title, "INITIATIVE PETITION FOR SUBMISSION TO THE PEOPLE," and the language directing the secretary of state to submit the petition to the people. Compare RCW 29A.72.120 with.110. This information is vital because it is the only statutorily required information that directly identifies for voters whether they are signing a petition that will be placed on the ballot at the next general election or will be submitted to the legislature. It is by this language that the petitioners direct the actions of the secretary of state. Thus, the notice requirements identifying the types of initiatives cannot simply be dismissed because "all voters will have an opportunity to cast their votes for or against the initiative" in the general election. Majority at 707.
¶ 9 Petitions that do not contain language clearly identifying the type of initiative proposed do not substantially comply with RCW 29A.72.110 or .120, because they fail to put voters on notice as to the type of initiative and they fail to provide accurate direction to the secretary of state. Rather than facilitating the initiative process, such fatally flawed petitions inhibit the process by obscuring an important element of the measure. With regard to initiative titles, we have defined sufficient notice as that which "`would lead to an inquiry into the body of the act, or indicate to an inquiring mind the scope and purpose of the law.'" Wash. State Grange v. Locke, 153 Wash.2d 475, 497, 105 P.3d 9 (2005) (quoting Young Men's Christian Ass'n v. State, 62 Wash.2d 504, 506, 383 P.2d 497 (1963)). Similarly, adequate notice as to the type of initiative need not perfectly mimic the format of RCW 29A.72.110 or .120 but must be sufficient to indicate to a petitioner the path down which the initiative will travel.
¶ 10 We found substantial complianceand thus sufficient noticein Schrempp. There, we concluded the secretary of state had not acted contrary to law because the petitions at issue contained clear language stating that the initiative was to the legislature in addition to a subheading labeling the petition an initiative to the people. Schrempp, 116 Wash.2d at 938, 809 P.2d 1381. The face of the petition described the initiative as one to the legislature twice in its operative paragraph and contained large print above the signature line stating: "`WASHINGTON STATE VOTERS SIGN BELOW TO SUBMIT INITIATIVE 120 TO THE LEGISLATURE IN 1991.'" Id.[1] The secretary of state thus acted according to his statutorily prescribed discretion in accepting a petition that substantially met the requirements of the statute by providing notice to petitioners and direction to the secretary of state. Id. at 933, 938, 809 P.2d 1381.
¶ 11 By contrast, the I-1029 petition contains no language directly identifying the initiative as one to the people but does contain language by which "the undersigned citizens and legal voters ... respectfully direct that this petition ... be transmitted to the legislature of the State of Washington." Agreed Statement of Facts, Ex. M. The petition fails to substantially comply with the requirements for an initiative to the people but does substantiallythough not perfectly *711 comply with the requirements for an initiative to the legislature. The secretary of state thus had discretion to accept or reject the petition as a petition to the legislature but had no discretion to accept the I-1029 petition as a petition to the people.
¶ 12 By accepting I-1029 as a petition to the people, Secretary of State Reed ignored the direction of the petitioners and acted contrary to law by waiving the requirement that the petition substantially comply with RCW 29A.72.120. Although in this case there is no evidence that petitioners were misled or that the sponsors of I-1029 intentionally created an ambiguity, the majority's broad construction of the secretary of state's discretion under chapter 29A.72 RCW, essentially making compliance with RCW 29A.72.120 up to the discretion of the secretary of state, leaves the way open for those who intentionally create ambiguities for political advantage. A writ prohibiting certification of I-1029 as a petition to the people is, therefore, an appropriate action in this case, and in fact is required in order to protect the integrity of the initiative process. I dissent.
WE CONCUR: SUSAN OWENS, and RICHARD B. SANDERS, JJ.
NOTES
[1] The parties submitted an agreed statement of facts. RAP 16.2(d). Petitioners' subsequent request to take judicial notice of additional records, and intervenors' corresponding request to submit additional evidence, were both denied.
[2] The dissent acknowledges that mandamus will not lie to control a discretionary act but then essentially urges this court to do just that. While mandamus may remedy an official's total failure to exercise discretion, it does not lie to force the official to act in a particular manner. Nat'l Elec. Contractors Ass'n, Cascade Chapter v. Riveland, 138 Wash.2d 9, 32, 978 P.2d 481 (1999); see also Vangor v. Munro, 115 Wash.2d 536, 543, 798 P.2d 1151 (1990). In this connection, RCW 29A.72.170(1) plainly states the secretary of state "may" refuse to file a noncomplying initiative petition, signaling his discretionary authority. See Schrempp, 116 Wash.2d at 934, 938, 809 P.2d 1381. As discussed above, the factual record amply demonstrates that the secretary of state made a reasoned decision to not reject the petitions and to file them as supporting an initiative to the people, not inconsistent with ambiguities on the petitions and entirely consistent with the underlying history of the petitions as known to the secretary. Mandamus will not lie to direct the secretary of state to exercise his discretion differently.
[3] The dissent does not address our court's lack of original jurisdiction under the constitution to directly review the secretary of state's action. See CONST. art. IV, § 4.
[4] Petitioners rely on three foreign authorities. See Convention Ctr. Referendum Comm. v. D.C. Bd. of Elections & Ethics, 441 A.2d 889 (D.C. 1981) (plurality opinion); Nist v. Herseth, 270 N.W.2d 565 (S.D.1978); Thomson v. Wyo. In-Stream Flow Comm., 651 P.2d 778 (Wyo.1982). But all three decisions are distinguishable. In the District of Columbia case, supporters of a substantively invalid initiative measure sought to amend the measure to render it valid while petitions were in circulation. Convention Ctr. Referendum Comm., 441 A.2d at 900. The court held in a plurality decision that the initiative bill could not be materially revised after circulation. Id. at 901. The court also held the measure was barred because it fell outside the scope of the people's initiative power. Id. at 915. Here, the substantive validity of I-1029 is not at issue and there was no material alteration to the measure itself. Nist turned on numerous signature verification problems resulting in an insufficient number of valid signatures to allow the proposed measure to go forward. See Nist, 270 N.W.2d at 568-72. The Wyoming decision that petitioners cite discussed similar verification problems and a lack of sufficient signatures. Thomson, 651 P.2d at 783-84. These fatal flaws are not involved here.
[1] [O]n the front of the petitions there appear the operative words of the petition, i.e., that it is addressed to the Secretary of State and that the undersigned citizens and legal voters direct that the proposed measure `be transmitted to the legislature' and that the signers `petition the legislature to enact said proposed measure into law.' In a box headed `NOTE' it states that `200,000 signatures are needed to place Initiative 120 before the Legislature.' Above the lines on which voters sign, there appears in capital letters: `WASHINGTON STATE VOTERS SIGN BELOW TO SUBMIT INITIATIVE 120 TO THE LEGISLATURE IN 1991.'

Schrempp, 116 Wash.2d at 933, 809 P.2d 1381.